BENJAMIN  E.  P.  CRAMPTON  vs.  MARGARETTA  E.
PERKINS.

*Promissory note—Fraud—Burden of Proof—Bona fide
holder for Value—Knowledge of facts Impeaching the
Validity of a Promissory note.*

If fraud in the procurement of a note be shown, the *onus* is cast upon
the plaintiff to show that he paid value for the note before matu-
rity, and under circumstances that created no presumption that he
knew of the existence of the facts that impeached the validity of
the instrument.

A *bona fide* holder of a negotiable instrument for valuable considera-
tion, without notice, will be protected against the antecedent
equities of the original parties.

But actual knowledge of the impeaching facts at the time of taking
the paper, notwithstanding value is paid, will defeat recovery on
it.

APPEAL from the Baltimore City Court.

The appellant as indorsee, brought this action of as-
sumpsit against the appellee as maker of the promissory
note sued on.  The case is stated in the opinion of the
Court.

*First Exception.*—The plaintiff objected to all of the
testimony on the part of the defendant, tending to show
fraud or a want of consideration in the making of the
note, or any fraud practised by the said Appler or Mason
upon the defendant, as not being evidence against the
plaintiff, because the defendant had not shown that the
plaintiff had any knowledge of the alleged fraud or want
of consideration; but the Court, (STEWART, J.,) allowed all
of such testimony to go to the jury.  The plaintiff ex-
cepted.

Crampton *vs.* Perkins.

*Second Exception.*—The plaintiff then offered the two following prayers:

1. If the jury find from the evidence that the defendant signed the note sued on in this case, that H. E. Appler, the payee, endorsed and passed said note to T. J. Mason; and shall further find that the said T. J. Mason afterwards passed said note to the plaintiff for a valuable consideration before said note became due and payable; and shall further find that said plaintiff purchased said note without notice of any fraud in the obtention of said note, or in the endorsement thereof, or any failure of consideration, then the plaintiff is entitled to recover the full amount thereof, with interest, in their discretion, and there is no evidence in the case legally sufficient from which they can find that the plaintiff had any knowledge or notice of fraud or want of consideration in the making of said note, or the endorsement thereof to said Mason.

2. If the jury find from the evidence that the plaintiff purchased the note sued on in this case for value, prior to its maturity, with no other knowledge than the note furnished on its face, except the same had been passed to T. J. Mason in payment for a store, then they must find that the plaintiff is a *bona fide* holder of said note, and had no knowledge of fraud or want of consideration, and the right of the plaintiff to recover is not affected by any evidence of fraud or want of consideration by or between the other parties to said note.

The Court granted the first portion of the foregoing first prayer, but refused to grant the latter part, commencing with the words, "and there is no evidence," and refused to grant the second prayer. The plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Charles H. Stanley,* for the appellant.

*Charles J. Bonaparte,* for the appellee.

IRVING, J., delivered the opinion of the Court.

This action of assumpsit was brought by the holder, who was the endorsee of a promissory note, against the maker. The declaration contains the common counts, and a special count sitting out the promissory note, and its endorsement by the payee to Mason, and by him to the plaintiff. The pleas are general issue, and that the note was procured by fraud. The replication traversed the fraud, and issue was joined. According to the undisputed facts, the appellee contracted with one T. J. Mason for the purchase of a tobacco and cigar store, stock and goodwill which she designed to be conducted by her nephew, Howard E. Appler, who resided with her. A note for two hundred and forty dollars was drawn in favor of Mason at ninety days, and was signed by Howard E. Appler, and the appellee wrote her name in blank across the back of the note. At the time of executing this note, the appellee gave the payee Mason two watch chains as collateral security for the money secured by the note. A few days afterwards, Mason, thinking that a note of different form would be more negotiable, went with Appler to the appellee's house to get its form changed, and the note now in suit was substituted for the first note. Mason did not see the appellee, but Appler took the note into the room where appellee was, and testifies that she willingly signed it. This note was a note of appellee for two hundred and forty dollars in favor of Howard E. Appler, which was by him endorsed to Mason, and by Mason to the plaintiff. When the note was endorsed by Mason to the plaintiff, the latter was not informed that Mason held the chains as security, and only shortly before the note fell due, did he learn this fact. He then demanded them, but

Mason declined to surrender to him because he had receipted for them. Thereupon appellant requested Mason to notify Mrs. Perkins that the note was falling due, and ask that it be paid, which was done without telling her of the assignment of the note, for the reason that it was thought she would more readily pay it if she was not so informed. When the note fell due, Mason and appellant called together, and demanded payment, which being, refused, this suit was brought.

The first exception is to the admission of certain facts connected with the execution of the new note, or the exchange of the original for the new note which were supposed to indicate fraud in the procurement thereof. In this ruling there was no error. The issue of fraud was distinctly raised by the pleadings, and it is the established law that, if fraud in the procurement of a note be shown, the *onus* is then cast on the plaintiff to show that he paid value for the note before maturity, and under circumstances that "create no presumption that he knew of the existence of the facts that impeached the validity of the instrument." *Totten vs. Bucy*, 57 *Md.*, 452, 453, and authorities there cited. Such evidence was clearly admissible in order to put the holder to the test of showing he was a *bona fide* holder for value and without notice of the impeaching facts. In his charge of this burden, he testified himself that he bought the note and paid value for it, in entire ignorance of any fraudulent dealing, if there was any, on the part of the parties to the transaction itself or those things out of which it grew. There is nothing to show he was privy to any of the transactions antedating, or the circumstances attending, the execution of the note. It was shown that he did not know how the note was procured, and that it was offered to him with assurances that it was all right, and as he had knowledge touching the responsibility of Mrs. Perkins, he bought. We can find nothing in the proof, to warrant the finding of knowledge on his part of any fraud in the procurement of the note.

Crampton *vs.* Perkins.

The circumstances so ingeniously pressed by appellee's counsel as establishing it, are too inconclusive and vague, to justify the finding of knowledge or even of suspicion on his part. The law in such case is well settled that the holder is protected. In *Cecil Bank vs. Heald, et al.,* 25 *Md.*, 573, the Court says: " the general principle of commercial law, that a *bona fide* holder of a negotiable instrument, for a valuable consideration, without notice, will be protected against the antecedent equities of the original parties, is fully sustained by numerous authorities." In *Maitland vs. The Citizens' National Bank of Baltimore,* 40 *Md.*, 542, it is said to be essential to the commercial world that such should be the law; but it is laid down with equal emphasis that actual knowledge of impeaching facts at the time of taking the paper, notwithstanding value is paid, will defeat recovery on it. The second exception is to the refusal of the Court to grant the appellant's first prayer, and the striking therefrom the clause, that " there is no evidence legally sufficient in the case, from which they can find that the plaintiff had any knowledge or notice of fraud or want of consideration in the making of said note, or the endorsement thereof to said Mason," and also to the refusal to grant the second prayer of the plaintiff.

As we have already said, we have been unable to find any evidence legally sufficient to found a conclusion upon that the plaintiff did have knowledge of any thing wrong in the transaction. He testifies directly that he did not, and there is certainly nothing in the proof to contradict him. Such being the case, it was error to strike out the clause of the prayer which so said. The prayer should have been granted without modification. Had it been so granted there would have been no need for the second prayer; though we see no valid objection to it.

> *Judgment reversed, and*
> *cause remanded for new trial.*