MARION DE KALB SMITH, COMPTROLLER OF THE TREAS-
URY OF MARYLAND, *vs.* THE COUNTY SCHOOL
COMMISSIONERS OF DORCHESTER COUNTY.

*Oyster Law—County Scraping Licenses—Repeal of Statute by Impli-
cation.*

The rule that if two statutes are plainly repugnant to each other, the
later Act operates to the extent of the repugnancy as a repeal of the
first, applies also to different sections of the same law.

Under the Act of 1894, ch. 380, the Clerks of the Circuit Courts of the
counties are required to pay to the Comptroller of the Treasury one-
third of the amount received for permits to take oysters under scrap-
ing licenses, and not one-half of said amount.

The Act of 1894, ch. 380, sec. 29, provides that *one-third* of the money
received from the county oyster scraping licenses shall be paid into
the Treasury of the State and placed to the credit of the "Oyster
Fund." Section 30 of said Act provides that all licenses not used
shall be returned by the Clerks of the Courts to the Comptroller,
and the said Clerks shall also pay to the Comptroller *one-half* of all
moneys received for *such licenses*, which sum shall be paid to the
credit of the "Oyster Fund." *Held*, that the language of section
30 is too vague to repeal by implication the express provision of
section 29, and that upon the whole Act the intention of the Legis-
lature appeared to be that *one-third* of the county scraping licenses
should be paid into the State Treasury.

Appeal from a decree of the Circuit Court for Dorchester
County (PAGE, C. J., HOLLAND and LLOYD, JJ.) enjoining
the Clerk of the Circuit Court for that county from paying
into the Treasury of the State more than one-third of the
money received by him for licenses issued under Code Pub-
lic Local Laws, Art. 10, sec. 260. The case is stated in
the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN,
MCSHERRY, FOWLER, BRISCOE and BOYD, JJ.

*John Prentiss Poe, Attorney-General*, for the appellant.

*Sewell T. Milbourne*, for the appellees.

BOYD, J., delivered the opinion of the Court.

The question in this case is whether the Clerk of the Circuit Court for Dorchester County shall pay to the Comptroller of the State *one-third* or *one-half* of all moneys received by him from what are called county scraping licenses to take oysters.

Under the Local Laws of that county the Clerk is authorized to issue licenses to residents of the county to employ their boats of a designated capacity in taking or catching oysters with scrapes or dredges in certain defined waters. By sec. 260 of Art. 10 of the Local Code, the School Commissioners of Dorchester County were required to furnish the Clerk with the requisite number of blank licenses, and the Clerk was required, at the end of the season, to return to the School Commissioners the licenses not issued, and to pay the license money into the public school fund of the county after deducting a fee of fifty cents for each license issued.

The general oyster laws of the State, as embodied in Art. 72 of the Code of Public General Laws, authorized certain licenses to be issued for the benefit of the State, but did not originally require any portion of the money received from the county scraping licenses to be paid to the State.

By chap. 380 of the Laws of 1894, the Legislature repealed Art. 72 of the Code of Public General Laws and re-enacted the same with amendments. Apparently conflicting provisions in sections 29 and 30 of that Article, as amended, have caused the difficulty in this case. Section 29 provides that "all moneys received or obtained from dredging licenses, issued under the provisions of the preceding sections of this Article, and *one-third of the moneys received from the county scraping licenses,* and all fines, penalties or forfeitures imposed in pursuance thereof, shall, upon the warrant of the Comptroller, be paid into the treasury and *placed to the credit of a fund which shall be*

*called* " *The Oyster Fund*," and the same shall be kept sep-
arate and distinct from other funds in the treasury," etc.
It then goes on to provide, that this fund should only be
used for the protection of fish and oysters in Maryland
waters, the maintenance of the State Fishery Force, etc.
The Comptroller is required to make a special statement in
his annual report of the receipts and expenditures on account
of said funds.   Section 30 requires the Comptroller to fur-
nish two sets of numbers corresponding with the licenses to
catch oysters with scoop, scrape, dredge or any other similar
instrument, to persons taking out such licenses.   The size
of numbers and places where they are to be put are men-
tioned with great particularity, and severe penalties are
provided for the violation of any of the provisions of this
section.   Thus far the section corresponds with section 12
of Article 72 of the Code, and then adds the following :
"The provisions of this section shall apply to all boats
licensed to take oysters with scrape or scoop by any county
in this State, except that the numbers for such boats shall
be painted red instead of black, and the numbers shall be
delivered by the Comptroller to the Clerks of the Court as
they may be ordered, and at the end of the season all
licenses not used shall be returned by said Clerks to the
Comptroller ; and the said Clerks shall also pay to the
Comptroller one-half of all moneys received by him for
*such licenses*, which sum *shall be paid to the credit of the
oyster fund.*"

It will be observed that by section 29 *one-third* of the
money received from the county scraping licenses is to be
paid into the State Treasury and placed to the credit of the
oyster fund.   If that stood alone there could be no ques-
tion as to what proportion of the amount received from
these licenses should be paid to the State.   But it is con-
tended that section 30 provides that *one-half* shall be paid
to the State, and that inasmuch as it is subsequent to sec-
tion 29 it must prevail.   "The general doctrine on the sub-
ject of implied repeals is that where there are two Acts on

the same subject, both are to be given effect if possible.    If, however, the two Acts are plainly repugnant to each other in any of their provisions, the latter Act, without any repealing clause, will operate to the extent of the repugnancy, as a repeal of the first." *Tax cases*, 50 Md. 296.    This also applies to different sections of the same law. *Harrington* v. *Rochester*, 10 Wend. 553; *State* v. *Shelby County*, 36 Ohio St. 326; *Packer* v. *Sunbury, etc., R. Co.*, 19 Pa. St. 211.    If, however, it is manifest from the whole act that the Legislature intended the prior section to remain in force, then such intention must govern.

But is section 30 "clearly repugnant" to section 29? It is true that it says the Clerks shall pay to the Comptroller one-half of all moneys received by them from "*such licenses.*"    But *what* licenses? The only prior use of the word "licenses" in this section is in the clause immediately preceding, which says, "and at the end of the season *all licenses not used* shall be returned by said Clerks to the Comptroller."    It is perfectly manifest that the Clerks will not receive any money from *licenses not used*, and hence it is apparent that there is an error of some kind in this section. It is said on the part of the appellant that we should give the language such a construction as would prevent it from being meaningless, and hence we should construe the section to mean that the Clerk shall pay over *one-half* of all moneys received from *licenses that were issued.*    To do that we must assume that the Legislature meant to say something other than what it did say, and if that be so, can we be certain that it intended to require the Clerk to pay to the State *one-half* of the money received from these licenses for the use of the oyster fund when it had just said in a preceding section that *one-third* should be so paid?    In order to determine that section 30 repeals section 29, so far as the question involved in this controversy is concerned, we must give it a meaning different from the language used and contrary to its gramatical construction.    Section 260 of Article 10 of the Local Code directed the Clerk of Dorches-

ter County to pay *all the money* received from these licenses to the public school fund.    Section 29 of Art. 72 of the Code of Public General Laws as amended by the Act of 1894, repealed it by implication to the extent of requiring one-third of the money to be paid to the State, and the appellant contends that section 29 should be construed to be further amended by a section which admittedly does not apply to it, unless the construction is changed.    Whilst, therefore, we think that the general principles of the rules of construction of statutes are as contended for by the appellant, yet it is clear that one section of an Article of the Code should not be held to be repealed by the section immediately succeeding it, when both were passed at the same time, unless the language of the latter is so clear and definite as to leave no room to question the intention of the Legislature.

Then, again, so far as the Act itself reflects on the intention of the Legislature, it would seem to point to section 29, as the one expressing the legislative intent on this subject. Sections 2 and 4 give the State only one-third of the money received from tonging licenses, which are issued by the State, and it is not probable thet the Legislature intended to give the State one-half of the proceeds of licenses issued by the counties—especially when it would be taken from the public school fund.    Sections 66 and 67 A, which of course are subsequent to section 30, require the moneys received from the licenses mentioned in them to be placed to the credit of the oyster fund, as provided by section *twenty-nine.*    Thus showing that when the members of the Legislature reached section 66 and 67 A, they had in mind, *had before them,* section 29, which, as we have said, clearly stated that *one-third* of the proceeds of the county scraping licenses was to be placed to the credit of the oyster fund, and they could not have supposed or intended that *one-half* was to be so placed when they had the plain declaration to the contrary before them.

We are therefore of the opinion that the language of section 30 is too vague and indefinite to justify us in saying

that it by implication repeals section 29, and, moreover, the whole Act shows that the will of the Legislature, as far as it can be gathered, was expressed by section 29. The decree of the Court below must be affirmed.

> *Decree affirmed with costs to the appellee.*

(Decided June 20th, 1895.)