## DELPHOS PRICE *vs.* THE BOARD OF LIQUOR LICENSE COMMISSIONERS FOR CECIL CO.

*Construction of the Liquor Law of Cecil County Providing for the Contingencies of License or Prohibition— Title of Statute.*

The title of the Act of 1898, ch. 532 is "An Act to enable the registered, qualified voters of Cecil County to determine by ballot whether spirituous or fermented liquors shall be sold in said county." The body of the statute provided that at the election to be held in November, 1898, and at the election to be held in November, in every fourth year thereafter, the question whether licenses should be issued for the sale of intoxicating liquors in Cecil Council, should be submitted to the voters; that if at such election the majority of the votes should be cast against license, then certain designated sections in the Act should be in force in said county; that if the majority of the votes be cast for license, then

other designated sections of the Act should be in force as the law of the county. Some of these provided for a Board of Liquor License Commissioners, who were empowered to issue licenses to duly qualified applicants therefor. At the election held in November, 1902, the majority of the votes were cast against license, but the petitioner in this case asked for a *mandamus* to compel the Board of License Commissioners to pass upon his application for a license to sell liquor, alleging the invalidity of the prohibition against the sale of liquor *Held*, that the Act of 1898 is not in violation of Constitution, Art. 3, sec. 29, which declares that every law shall embrace but one subject and that shall be described in its title; all of the provisions of the Act being relevant to the subject-matter mentioned in the title.

*Held*, further, that although that part of the Act providing for licenses went into effect as the result of the election held in 1898, yet that fact did not operate to repeal by implication the preceding part of the statute providing for the subsequent contingency of the vote being against the license, and that there is no conflict or repugnancy between the two parts of the law, but the one is suspended while the other is in force.

Appeal from the Circuit Court for Cecil County.

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, SCHMUCKER and JONES, JJ.

*Joseph N. Ulman* (with whom was *S. J. Harman* on the brief ), for the appellant.

*Albert Constable* and *John S. Strahorn*, for the appellees, submitted the cause on their brief.

JONES, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Cecil County, refusing a writ of *mandamus* upon the application of the appellant who sued for the same to compel the defendants as constituting the Board of Liquor License Commissioners for that county, to meet as such board at Elkton, in said county to receive from him a petition, bond and other papers accompanying an application for a hotel keeper's license to sell spirituous and fermented liquors and to take proceedings thereon as provided in the Act of 1898, ch. 532, sec. 4.

That Act is a local law of Cecil County, the title of which

is: "An Act to enable the registered qualified voters of Cecil
County to determine by ballot whether spirituous or fermented
liquors or cider shall be sold in said county." It provides
that the question whether any person or persons, or body cor-
porate, may be licensed in that county "by whom or in which
spirituous or fermented liquors, intoxicating drinks' or cider
may be sold or whether or not no license to sell the same in
said county shall be issued, shall be submitted to the regis-
tered and qualified voters of said county on the first Tues-
day after the first Monday in November, eighteen hundred
and ninety-eight, and on the first Tuesday after the first Mon-
day in November in every fourth year thereafter at the elec
tion then to be held therein" and if it shall appear by the re-
turns of such election that a majority of said votes have been
cast "Against License," then sections which follow in the Act
numbered from one hundred and seventy-nine to one hundred
and eighty-eight inclusive shall be in force in said county, and
stand in the place and stead of sections one hundred and sev-
enty-nine to one hundred and eighty-eight inclusive of Arti-
cle eight of the Code of Public Local Laws—title "Cecil
County, sub-title Liquors and Intoxicating Drinks." These
sections thus enacted as parts of the Code of Public Local
Laws contain provisions intended to make effective the prohi-
bition of the sale of liquors in Cecil County when it is deter-
mined by the popular vote that no license shall issue to sell
liquors in said county by defining such selling as a crime and
providing for the prosecution and punishment of the violators
of such provisions.

The Act then further provides that if it shall appear by the
returns at an election to be held under its provisions that a
majority of the votes cast are for license then other sections
are enacted to become a part of the local law of the county
which provide regulations under which licenses are to be is-
sued for the sale of liquors in the county, making provisions
for enforcing the observance of these regulations and prescrib-
ing penalties for their violation. Among other things in this
connection the statute provides for a Board of Liquor License

Commissioners for the county composed of three persons, the members of which are to hold "office during good behavior or until their successors are duly appointed and qualified." Any vacancy occurring in the board is to be filled by the County Commissioners of the county, who also are given the power to remove from office a Liquor License Commissioner "for neglect of duty or malfeasance in office upon the petition of any ten reputable citizens of Cecil County and proof of such neglect of duty or malfeasance in office satisfactory to the County Commissioners." Three persons to serve as a Board of Liquor License Commissioners are named and appointed in the Act. This board, it will thus be seen, is made a permanent and continuing body. When at any election at which a vote is taken as to whether liquor shall be sold in the county in question a majority of the votes cast are for license it is provided that persons wishing and intending to carry on the business of selling liquor shall make application to the Board of Liquor License Commissioners according to prescribed regulations and the board is required to hear such applications and to determine whether the requisite conditions exist as provided in the statute to entitle the applicant to a license and to grant or refuse such license according to the authority and discretion conferred upon them.

As has been seen the Act here under consideration provided that the question whether or not liquor should be sold in Cecil County should be submitted to the voters of the county at the election in November of the year 1898 and at the election to be held "on the first Tuesday after the first Monday in November in every fourth year thereafter. The petition for *mandamus* did not state specifically what had been the result of the election of 1898 upon the question directed to be submitted to the voters of said county by the Act here under consideration—whether liquor should be sold therein or not; nor does this appear from the answer of the respondents. We are therefore not informed, except inferentially, by the pleadings whether, under the Act, the conditions therein prescribed ever existed which

authorized the issuing of licenses to sell liquor.   The answer
of the respondents to the petition, after reciting the provisions
of the Act in question, the purport of which has already been
given, directing the submission to the voters of Cecil County
of the question of whether liquor should be sold or not in the
county, averred that at the election in 1902 held on the first
Tuesday after the first Monday in November, "the question
whether or not any person or persons, house, company, associa-
tion or body corporate may be licensed" to sell liquor therein;
or whether no license so to sell shall be issued, was submitted to
the registered and qualified voters of said county; and that proc-
lamation, was made as provided in the Act, of the result of said
vote, to the effect that a majority of the votes cast upon the ques-
tion so submitted was "against license for the sale of spirituous
or fermented liquors in said county."   The respondents then
aver that by reason of this result of the vote upon the said
question at the election so held, the provisions of the act in
question which have been referred to as intended, in such a con-
tingency, to make effective the prohibition of the sale of spirit-
uous and fermented liquors in the county in question, make
it unlawful for them to issue a license to the petitioner.   To
this answer the petitioner interposed a demurrer which having
been overruled and his petition refused he has brought this
appeal.

The question we are thus called upon to decide in the state
of record we have before us is, are the facts alleged in the an-
swer of the respondents and admitted by the demurrer, suffi-
cient to sustain the action of the Court in refusing the appel-
lant's petition ?   It is urged in support of the demurrer that
the sections of the Local Law of Cecil County as enacted by
the Act of 1898, here under consideration relied upon in the
answer of the respondents as making it unlawful for them to
issue licenses or to entertain applications therefor are not in
force.   The grounds of this contention are that the part of the
law relied upon in the answer is inconsistent with and repug-
nant to the later, subsequent sections making regulations for
the issuing of licenses, &c.; and that the last-mentioned sec-

tions having gone into effect by the popular vote in 1898 repealed the preceding part of the law making provisions for the contingency of such vote being against license ; and further that the part of the law in question so making provisions for the last-mentioned contingency is void as being repugnant to the provision in Article 3, section 29, of the Constitution that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

We will dispose of the constitutional question first.   We can see no force whatever in the contention of the appellant in this aspect of the case.   The constitutional provision referred to has been under consideration in this Court in a number of cases.   By reference to these it will be found that it has always received a liberal construction in making application of it in particular cases.   This received forcible illustration in the case of *State* v. *Norris*, 70 Md. 91, where it was said of the title to the Act there drawn in question "it certainly requires a very liberal construction of the constitutional provision to maintain the sufficiency of this title" and was further said. "Many Acts are passed, and often of great importance, the titles of which are exceedingly deficient in definite and clear description of the subject-matter of the Act.   But this Court has ever been reluctant to defeat the will of the Legislature by declaring such legislation void, if by any construction it could possibly be maintained."   In a very recent case *Mealey* v. *Hagerstown*, 92 Md. 741, it was said that titles of Acts that "have been held to be contrary to this provision were misleading and calculated to lead the Legislature and others to believe that one kind of legislation was proposed while another was attempted to be enacted, which was not germane to the subject mentioned in the title."   And in another recent case quoting with approval from an earlier one it is said : "If the several sections of the law refer to and are germane to the same subject-matter, which is described in its title it is considered as embracing but a a single subject and as satisfying the requirements of the Constitution in this respect." *Drennen* v. *Banks*, 80 Md. 310.   To support the contention of the

appellant in this case that the Act here in question embraces more than one subject in containing the two sets of provisions that we have indicated or that the title is not sufficiently descriptive of the subject-matter of the Act we would go contrary to this current of authority and give to the Constitutional provision in question a very narrow and illiberal construction.    The object of this provision has been well stated in the case of *State* v. *Norris, supra,* as "first to prevent the combination in one Act of several distinct and incongruous subjects ; and second, that the Legislature and the people of the State may be fairly advised of the real nature of pending legislation."

The Act here under consideration comes much nearer gratifying the object of the constitutional provision in question than many of those assailed in previous cases as being in conflict with it that have been upheld.    It, in the first place, proceeds to do what its title indicates—that is to provide for enabling "the registered, qualified voters of Cecil County to determine by ballot whether spirituous or fermented liquors or cider shall be sold in said county."    What follows in the Act are regulations and provisions all germane to its main purpose and object.    Upon the taking of the vote upon the question thus to be submitted it would be determined either that the sale of liquor should thereafter be prohibited in the county or that the sale thereof should be allowed.    If the determination was that liquor should not be sold it was appropriate—even necessary—that there should be in that connection provisions for effectuating the will of the people thus pronounced.    If on the other hand the result of the vote was that liquor should be sold it was equally appropriate that there should be regulations in respect to the sale thereof.    These provisions and regulations were of such well recognized necessity and propriety to make effective and carry out the object and intent of the legislation embodied in the Act here in question as to be reasonably within the purview of its title and to relate to the general subject-matter indicated therein.    We must hold therefore that the Act under consideration cannot be said to em-

brace distinct subjects of legislation and that the title sufficiently indicates the subject thereof; and that it is not obnoxious to the constitutional objection we have been considering.

The ground first mentioned as urged by the appellant in support of his demurrer to the answer in the case is equally untenable. There is no repeal or nullification of one part of the law here in question by the other as is here contended. If we regarded the interpretation of the law in this respect as in doubt every intendment is to be made in favor of the law and every part of it. There must, if possible, be such an interpretation of it when under judicial consideration, as will give operation and effect to the law as a whole. Where two laws or two parts of the same law are so inconsistent with, and repugnant to, each other that the operation of one will be in necessary conflict with the operation of the other then the one which manifests the latest expression of the legislative will will prevail and the other will, by implication, be repealed because in such a case that will be supposed to have been the legislative intent. But repeal "by implication is never favored in law and it is only when the two Acts are repugnant and plainly inconsistent with each other that the rule applies." *Frostburg Min. Co.* v. *C. & P. R. Co.*, 81 Md. 28, (see p. 35). "The general doctrine on the subject of implied repeals is that where there are two Acts on the same subject, both are to be given effect if possible. If, however, the two Acts are plainly repugnant to each other in any of their provisions, the latter Act, without any repealing clause, will operate, to the extent of the repugnancy, as a repeal of the first * * * If however, it is manifest from the whole Act that the Legislature intended the prior section to remain in force, then such intention must govern." *Smith* v. *School Commissioners*, 81 Md. 513 (see pgs. 515–516).

Now the Act here under consideration is susceptible of a construction that will give operative effect to the whole law; and in fact we may say that we have no doubt as to the effect and operation this Act was intended to have. The whole law and every part of it was not intended to be in effect at the

same time; but it constructed two complete and perfect sys-
tems and provided that one or the other should be in force
according to the result at the elections to be held to ascertain
the popular will in that regard in the county to which it ap-
plies; that is to say it was evidently intended that when the
election at which it is provided there shall be a submission to
the voters of the county of the question of license or no
license to sell liquor resulted in a majority against license the
sections mentioned in the Act as being enacted as secs. 179 to
188 inclusive of the Code of Public Local Laws, Art. 8,
should be in force and have effect and what may be termed
the license sections enacted in the subsequent part of the Act
should for the time remain suspended; and that where
the result at any of the said elections should be in favor of
the issuing of licenses to sell liquor, by showing a majority
of the votes therefor, the sections enacted as a part
of Art. 8 of the Code of Public Local Laws to regulate the
issuing of licenses for the carrying on of the business of sell-
ing liquor, and such business, should be in force and opera-
tion; and during such time as they are in operation the afore-
mentioned secs. 179 to 188 inclusive should be inoperative.
A permanent Board of Liquor License Commissioners was
created to have charge of the issuing of licenses whenever
that part of the law which authorized the issuing of licenses
is in force, but their functions, together with all that part of
the law with which their powers are connected, are suspended
whenever secs. 179 to 188 inclusive are in force. There is
therefore no conflict between the two parts of the law—the
one to regulate prohibition of and the other to regulate
licenses in regard to the sale of liquor.

A precedent for legislation of the nature of that with which
we are here dealing is to be found in the Act of 1864, ch. 348,
which was entitled "An Act to regulate the issuing of license
for the sale of spirituous or fermented liquors within the Bor-
ough of North East, in Cecil County," and provided that the
qualified voters residing in the borough should "have the
privilege of deciding by ballot at an election called by the

Commissioners of said borough for the purpose, on some day in April, 1864, and on some day in the same month in each subsequent year whether any license to sell spirituous or fermented liquors of any kind or description whatsoever shall be granted or issued by the Clerk of the Circuit Court of Cecil County," &c. The constitutionality of this Act was assailed and it came under review in this Court in the case of *Hammond* v. *Haines*, 25 Md. 541, when after very elaborate argument by counsel it was upheld by this Court in a carefully considered opinion. It results from the foregoing views that the order of the Court below must be affirmed.

*Order affirmed with costs to the appellee.*

(Decided January 14th, 1904.)