# THE COUNTY COMMISSIONERS OF ANNE ARUN-
## DEL COUNTY AND WALTER W. CROSBY,
### ENGINEER, ETC., *vs.* THE UNITED
### RAILWAYS AND ELECTRIC
### COMPANY.

*Highways and Streets—Road Improvement Under Act of 1904,
Ch. 225, Distinct from Building of Roads Under Other Stat-
utes—Injunction by Taxpayer to Restrain Construction of
Road When Statute Is Not Complied With—Right of County
Commissioners Under Act of 1908, Ch. 654, to Require Change
in Location of Electric Railway Tracks—Implied Repeal of
Private Act by Subsequent General Act—Character of Road
to Be Built by State Geological Survey.*

The Act of 1904, Ch. 225, established a system for the improve-
ment of highways at the joint expense of the State and of
the counties, under the supervision of the State Geological
and Economic Survey. It provided that in the improvement
of a road under the Act, the County Commissioners should
give written notices to the chief engineer of the survey of
their intention to improve the road, which must be approved
by the survey; that the advertisement for bids for doing the
paving must be published for two consecutive weeks; that no
contract for the same should be awarded if all bids exceed the
amount specified. *Held,* that these requirements are not mere-
ly intended to safeguard the interests of the State, and are
not merely directory, but they are for the benefit of the public
generally and especially for the benefit of State and County
taxpayers; that proceedings under this Act cannot be aided
by provisions of the general law relating to the powers of
County Commissioners in the repair of roads, and that a
taxpayer is entitled to maintain a bill for an injunction re-
straining the execution of a contract for a road improvement
made in violation of these statutory requirements.

The Act of 1904, Ch. 225, creates a method for the improvement of highways at the joint expense of the State and the counties distinct from, and independent of, the provisions of existing public general and local laws conferring upon County Commissioners power to construct and repair roads at the expense of the several counties. The two systems cannot be combined in the improvement of any one road.

The title of the Act of 1908, Ch. 654, is, an Act to repeal certain designated sections of the Code of Local Laws, title Anne Arundel County, sub-title, Roads, and all other local or general laws inconsistent with the provisions of the Act, and to re-enact the same with amendments. In the body of the Act, the Commissioners of that county were authorized to compel any railway company having tracks on the roads of the county, to change the rails and the location of the tracks and to pave and keep in repair the roads covered by the tracks with the same kind of paving material as might be used on the remaining portion of the road. At the time of the passage of this Act, the legislative charter of the Curtis Bay R. Co. (Act of 1890, Chap. 505) required that company to place its tracks on the margin of the roads along which it ran, and authorized the use of a certain rail. At the same session of the Legislature in 1908, a bill was introduced to compel that railroad company to change the location and character of its tracks, which bill failed to pass. *Held,* that the provision in the Act of 1908 relating to street railway tracks is not invalid as being in conflict with Constitution, Art. 3, Sec. 29, which requires the subject-matter of every law to be described in its title.

*Held,* further, that this Act does not repeal by implication, and was not intended to repeal, the provision in the charter of the Curtis Bay R. Co. relating to the location of its tracks, and that the County Commissioners are not authorized to require that company to change the location.

A prior special or private Act of the Legislature is not repealed by a subsequent general Act, unless there be an express reference to that previous Act or a necessary inconsistency between the two.

When the charter of an electric railway company authorizes the location of its tracks in a certain way, the Legislature can

require a change in the location only upon fair principles of indemnity in respect to expenditures made by the company in reliance upon its charter.

The Act of 1904, Chap. 225, Sec. 4, provides that a road to be constructed under the system established by that Act, shall be a macadamized, or a telford, or other stone road, or a road constructed of gravel or of other good material. *Held,* that under this section, the choice of the kind of road to be constructed in any particular locality is confided to the judgment of the Geological Survey, and they may select a roadway of vitrified brick.

*Decided January 20th, 1909.*

Appeal from the Circuit Court for Anne Arundel County (BRASHEARS, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*James W. Owens,* for the County Commissioners of Anne Arundel County, appellants.

*Samuel K. Dennis* (with whom was *James U. Dennis* on the brief), for Walter W. Crosby, appellant.

*Joseph C. France* and *James M. Munroe,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appeals in this case are from an order of the Circuit Court for Anne Arundel County overruling the appellants' demurrers to the appellee's bill for an injunction. The bill had been filed by the complainant in its two-fold capacity of a State and County taxpayer and the owner of property especially affected by the proceeding, which it sought to enjoin.

The main purpose of the injunction, asked for by the bill, was to restrain the defendants from proceeding with the execution or performance of a contract for the repaving of First street, commonly known as Light street No. 2, in the village of Brooklyn, purporting to have been made in accordance with a plan and specifications prepared under the supervsion of the State Geological and Economic Survey for such repaving. The bill of complaint also prayed that sec. 196 of chap. 654 of the Acts of the General Assembly of 1908 be declared void in so far as it purports to authorize the County Commissioners of Anne Arundel County to compel the appellee to remove and relocate its existing tracks and overhead work on First street and repave certain portions of the street with vitrified brick, and that the County Commissioners be restrained from proceeding thereunder.

Both defendants demurred to the bill, but their demurrers were overruled by the order appealed from which directed the injunction to issue as prayed. Before the hearing of the demurrers the bill was amended by consent by adding thereto certain additional allegations of fact to be treated as if they had formed part of the bill when it was filed. Those allegations will be treated as part of the bill for the purposes of this opinion.

The principal allegations of the bill, as amended, are:

That the complainant, as successor of the Baltimore and Curtis Bay Railway Company, owns and operates a double track electric railway over the portion of First street sought to be repaved which extends about 1600 feet southerly from the county terminus of the long bridge.

That the tracks on First street were laid by its predecessor in strict conformity with the provisions of its charter (chap. 505 of Acts of 1890) which required them to be laid on the margin of the streets or roads occupied by them so as to leave a width of at least fourteen feet for vehicular traffic "unoccupied and undisturbed by said track or tracks."

That at the time the tracks were laid First street was private property and had not become a public road or street

of Anne Arundel County, and therefore the complainant had acquired a private right of way over it by a deed, from its owner, the South Baltimore Harbor and Improvement Co., of which a copy is filed with the bill as an exhibit. At the time the charter of complainant's predecessor was granted and when the tracks were laid on First street and ever since then sec. 344 of Art. 23 of the Public General Laws of Maryland has provided, that: "In all cases where any passenger railway company uses the road bed or any portion thereof of any turnpike, street or road in any county of this State, it shall at all times keep in good and proper repair not only the portions of said turnpike, street or road which may be embraced between the rails of its track but also that part which shall extend for a distance of two feet on either side of said rails." That the complainant has fully complied with not only the requirements of its charter as to the location of its tracks but also with the provisions of the law in reference to keeping in repair the streets and roads on which they are located, and it is willing to continue to do so.

The bill further alleges that the defendants the County Commissioners and Walter W. Crosby as Chief Engineer of the State Geological and Economic Survey have entered into an arrangement for paving the portion of First street, traversed by the complainant's railway tracks, which is now an unpaved country road, with vitrified brick and the County Commissioners have awarded the contract therefor to H. E. Gray in pretended but not real conformity with the provisions of chap. 225 of the Acts of 1904, commonly known as the Shoemaker Road Law. That the said arrangement for so repaving First street is illegal and void because, the Shoemaker Road Law contemplates the construction or improving of public roads and highways at the joint expense of the State and County with macadamized or telford or other stone road or a road constructed of gravel or other good material, but it neither contemplates nor authorizes the paving of roads with vitrified brick which is far more expensive than either "telford" or "macadam" systems of road construction, which

use broken stone and are similar in character, and that a brick pavement would not be suitable for a road like First street.

It is further alleged that even if an arrangement for the paving of First street with vitrified brick could be made under the provisions of the Shoemaker Road Law the defendants in their attempted arrangement to utilize that law have failed to comply with its material provisions in that:

(*a*) No written notice was given to the Chief Engineer of the Survey on or before the 1st of March, 1908, of the intention of the County Commissioners to improve First street under the provisions of the Act as required by its first section.

(*b*) Nor do the records of the Survey show that there. was ever any application made to it for or any consideration or approval by it of the paving or macadamizing of said street as required by section 2 of the Act.

(*c*) The advertisement for bids for the paving having run for but twelve days was not made in conformity with the provisions of section 6 of the Act which required it to be published for two consecutive weeks.

(*d*) The contract for said paving was awarded by the Commissioners at the price of $12,100.00 (being $506.00 in excess of the estimate therefor of $11,594.00 made by the Chief Engineer of the Survey), in direct violation of section 7 of the Act which provides that "if all bids exceed the amount specified no contract shall be given."

(*e*) That there is an agreement between the County Commissioners and the Chief Engineer of the State Geological and Economic Survey under which the County Commissioners are to receive from the State, not one-half of the cost of paving the street with vitrified brick, but one-half of what a macadam road would cost if it were to be constructed in place of the brick pavement and no more.

The bill further alleges that the County Commissioners, under the assumed authority of the Act of 1908, chapter 654, have served upon the complainant a written notice requir-

ing it at its own expense to take up its tracks from the margin
of said street and relay the same in the middle of the street
with girder rails instead of the "T" rails now in use and to
pave between the tracks as relaid and for two feet on the
outside of the outer rails with vitrified brick, all of which
will involve the new construction of 1600 feet of the railroad
at an expenditure of about $16,000 upon a line which is even
now operated at a loss. That the portion of said Act under
which the County Commissioners assumed to act in serving
said notice is found in section 196, and is as follows: "The
County Commissioners shall have authority to compel any
trolley or street railway company having or laying tracks on
the public roads, avenues or streets of Anne Arundel County
to change the rails and location of said tracks so as to make
said roads, avenues or streets safer or better for travel, and to
compel the said company or companies to pave and keep in
repair the roads, avenues or streets covered by said tracks
and extending two feet on the outer limits of either side of
said tracks with the same kind of paving material with which
the remaining portion of said roads, avenues or streets may
be paved. The failure of any street railway company to com-
ply with the provisions of this section shall be a midemeanor
and punishable by a fine of twenty dollars a day for each day
the said railway company shall neglect to comply with the
provisions of this section."

The bill then charges that the said portion of the Act of
1908, chap, 654, is invalid under sec. 29 of Art. III of the
Maryland Constitution because the title to the Act, which is
a local law purporting to amend the road law of Anne Arun-
del County, gave no notice that it embodied an attempt to
amend the charter, of complainant's predecessor, by which
the location of the tracks on said street is fixed and defined,
or to alter the complainant's obligation as defined by sec. 344
of Art. XXIII of the Code of 1904, or to impose upon com-
plainant the cost and expense of reconstructing its tracks and
overhead work, or to attempt to make it a misdemeanor for
it to exercise its charter rights. It is further charged that

said portion of the Act of 1908 is unconstitutional because it is special legislation intended to apply to and applicable at the time of its passage only to the case of the complainant. In that connection it is further alleged that at the Session of 1908 there was introduced on February 21, 1908, a bill known as House Bill No. 273 to require the Baltimore and Curtis Bay Eelectric Railway Company to move its tracks on First street in Brooklyn and change the same to girder rails and pave and keep in repair the pavement between said tracks and for two feet on either side thereof; and that the said bill failed of passage, and that subsequently the bill, which became the Act of 1908, chap. 654, and which by its title gave no notice to the complainant that its rights were intended to be thereby affected, was introduced and passed as House Bill No. 273.

The prayer of the bill is for a preliminary injunction restraining the County Commissioners from issuing or attempting to enforce any order requiring complainant to change the location of its tracks or to pave the street with an improved pavement, and the Chief Engineer of the State Geological and Economic Survey from approving the contract for the proposed paving or superintending its execution, and also restraining the County Commissioners from receiving any State money for the said proposed paving or spending any County money thereon; and that the portion hereinbefore quoted from the Act of 1908, chap. 654, may be declared unconstitutional and void and the defendants perpetually enjoined from proceeding thereunder; and that it may be adjudged and decreed that no State money can be expended under the Shoemaker law for vitrified brick pavement; and for general relief.

It is apparent from the allegations of the bill that the order overruling the demurrers to it was properly passed and must be affirmed, if for no other reason, because of the failure of the defendants to comply with the requirements of the Shoemaker Road Law in the several respects already mentioned. At the hearing of the appeal the appellants con-

tended that those requirements of the law were intended to safeguard the interests of the State alone and not be invoked on behalf of private interests; or that they were to be regarded as merely directory, and requiring only a substantial compliance with their terms. They also relied, in support of their proceedings in reference to paving First street, upon the general powers of the County Commissioners in reference to the construction and repair of public roads, which sec. 15 of the Shoemaker Law declares that its enactment was not intended to abridge.

We cannot accept as correct either of these contentions. The Shoemaker Law contemplates the expenditure under its provisions of large sums of both State and County money and its carefully prepared and well considered requirements were intended, as we said in *Fout's Case,* 105 Md. 567: "to exclude favoritism, jobbery and dishonesty and to insure the application of business principles to the work to be done under the law." They were inserted in the law for the benefit of the public generally and espcially the State and county taxpayers, upon whom the burden of providing the money for the contemplated improvement of the public roads must ultimately fall and they cannot be disregarded without endangering the purpose of their enactment. The provisions of other public general and local laws, conferring upon County Commissioners power to construct and repair roads at the expense of the several counties and regulating the exercise of that power, create a distinct system, independent of and different from that introduced by the Shoemaker Law, which was passed for the improvement of the public roads of the State at the joint expense of the State and the County in which the road lies. Both of these systems are statutory, and for that reason also in order to give validity to proceedings under either one of them the statutory requirements of that particular one must be complied with.

No countenance is found in the Code for an attempt to combine the two systems in the opening or improvement of any one road. Not only are the theories upon which the two

systems proceed separate and distinct but the statutory requirements of the one are inconsistent with those of the other. In the construction and repair of roads, under the general statutory powers of the County Commissioners, not only the survey and preparation of the plans for the work but its entire execution is required by the law to be under the "charge, control and supervision" of the County Road Engineer who is required to "make annually in writing a detailed report to the County Commissioners of all work done on the roads and bridges for the year" and the amounts due therefor, for the payment of which the Commissioners are required to make provision.

On the contrary, in all roads constructed or improved under the Shoemaker Law, the propriety of the undertaking must be determined and an estimate of its cost made by the State Geological and Economic Survey, and the surveys and plans therefor must be made by its engineer and if, as in the present case, the work is be done by contract such contract must be approved by the Survey and executed and performed under its "immediate supervision," and the completion and cost of the work must be certified by it to the State Comptroller who, upon the compliance with certain specified conditions, pays one-half of the entire cost of the work, not to exceed the estimate previously made as above mentioned. Section 6 of the Shoemaker Law reserves to the County Commissioners of the county, in which the road to be constructed or improved is located, the right to reject the bids for the work and to have it done, according to the Survey's plans and specifications, by such arrangement as they may deem best, but, as a contract was made by the commissioners for the doing of the work in the present case, we are not concerned with the operation or effect of that feature of the law.

We might conclude our opinion at this point, as what we have already said renders it necessary to affirm the order appealed from, but in view of the request made by counsel at

the argument of the appeal we will give expression to our views upon several of the other questions raised by the record.

Chapter 654 of the Acts of 1908 is technically a local Act affecting only Anne Arundel County, but it is of a general nature in that it provides a complete system for the construction, regulation and control of public roads by the County Commissioners. Its title is "An Act to repeal sections 191 to 203 v, both inclusive, and sections 203 w, 203 x, of Article II of the Code of Public Local Laws, title 'Anne Arundel County,' sub-title 'Roads,' and all other Acts or parts of Acts or provisions of the Code of Public Local Laws and the Code of Public General Laws, in so far as the said Acts or parts of Acts or provisions of said Codes may be inconsistent with the provisions of this Act, and to re-enact with amendments certain sections, to be known as sections 191, 192, 193 194, 195, 196, 197 and 198, of Article II of the Code of Public Local Laws, title 'Anne Arundel County,' sub-title 'Roads.' "

This Act ought not in our opinion to be held unconstitutional and void because its subject matter is not described in its title, but it does not therefore necessarily follow that it repeals or was intended to repeal the provision of the charter of the Baltimore and Curtis Bay Railway Company which requires that company to place its tracks on the margin of the streets and roads, along which it runs, so as to leave upon them a clear width of at least fourteen feet for the use of vehicles. The general control by the County Commissioners of the location of trolley and street railway tracks upon the roads, streets and avenues throughout the county is not necessarily incompatible with the continued exercise by one particular street railway company of existing chartered rights as to the position of its tracks upon streets and roads already occupied by it. The Act of 1908 does not either in its title or body designate or specify the Baltimore and Curtis Bay Railway Company or its tracks or the private Act by which it was incorporated or make any provision for compensation to it for the expense which had been incurred by it in constructing its tracks in their present location. Fur-

thermore the bill avers as indicative of the legislative intent in passing chap. 654 of Acts of 1908 that, at the same session of the Legislature at which that Act was passed, a bill known as No. 273 which on its face declared its purpose to be to compel the Baltimore and Curtis Bay Railway Company to make the very change in the location and character of its tracks on First street, which the County Commissioners are now seeking to compel it to make, had already failed of passage.

The fundamental fact to be ascertained, in determining whether a particular Act of legislation operates as a repeal of a former one, is the legislative intent in the passage of the latter Act. The intention to repeal may be manifested by a repealing clause containing a direct reference to the former Act, or it may be implied, with or without the presence in the latter Act of a clause repealing inconsistent prior legislation, from a necessary inconsistency between the provisions of the two Acts. In the many cases in which the Courts have passed upon the question of implied repeals of legislation by subsequent inconsistent legislation they have treated the language used in the Act supposed to effect the repeal as of the first importance, but they have also regarded the general character of the alleged repealing Act, the circumstances of its passage and the issues of public policy involved, as proper to be considered in arriving at a conclusion. The general principles applicable to cases like the present one, where the issue is between a prior private act and a subsequent one of a general nature, were stated by this Court in the case of the *State* v. *The Northern Cent. R. R. Co.,* 44 Md. 131, as follows: "It is unnecessary to review the many cases in which Courts have considered how far and under what circumstances a *subsequent general act* will be held to operate as *a repeal of a prior private act.* As a general rule, it will be admitted, that a general act is not to be construed to repeal a previous particular act, unless there is some express reference to the previous act, or unless there is a necessary inconsistency in the two acts. Where, however, the provisions of the general act are

entirely inconsistent and irreconcilable with the provisions of a prior, private act, the former must necessarily operate as a repeal of the latter, because it is impossible for the two acts to stand together.   *   *   *   "

This Court, acting upon the well settled doctrine that every reasonable intendment must be made that it was not the design of the State to surrender the power of taxation, or to exempt any property from its due proportion of the burden of taxation, has in different cases held subsequent general assessment or tax laws to repeal former private Acts granting to particular corporations a total or partial exemption from taxation. *Balto., Ches. & Atl. Ry. Co.* v. *Wicomico County,* 103 Md. 277 which was cited with approval and followed by the U. S. Supreme Court in *Commrs. of Wicomico County* v. *Bancroft,* 203 U. S. 212; *State* v. *Northern Cent. Ry. Co.,* 90 Md. 477, affirmed by the U. S. Supreme Court in 187 U. S. 266; *County Commrs. of Washington County* v. *Franklin R. R. Co.,* 34 Md. 159. In the following cases we have also upheld, in the situation there presented, the implied repeal of Acts of the Legislature by subsequent inconsistent legislation. *Willing* v. *Bozman,* 52 Md. 44; *State* v. *Yewell,* 63 Md. 120; *Yunger* v. *State,* 78 Md. 574; *Md. Agricultural College* v. *Keating,* 58 Md. 580; *State* v. *Falkenham,* 73 Md. 462; *Webster* v. *Cambridge Seminary,* 78 Md. 193.

In other instances we have held that the facts there presented did not justify the conclusion that the subsequent Act was intended by the Legislature to repeal the former one. *Frostburg Mining Co.* v. *C. & P. Ry. Co.,* 81 Md. 29; *Smith* v. *County Commrs.,* 81 Md. 513; *Garritee* v. *Baltimore,* 53 Md. 422; *Salisbury* v. *Jackson,* 89 Md. 523. In *Garrett* v. *Janes,* 65 Md. 26, under circumstances much resembling those of the case at bar, the Court held that there was no repeal by the subsequent Act although it in terms repealed "all inconsistent ordinances." In that case an ordinance of Baltimore City passed in 1858 in pursuance of authority conferred on the Mayor and City Council provided: "It shall not be lawful for any person to erect or set up any

portico, steps or other ornamental structure whatever on Mount Vernon Place a greater distance into the Place than nine feet measuring from the building line thereof." A subsequent ordinance of the City passed, in pursuance of like authority, in 1874, fixed a shorter distance as a limit to which any steps, porch or portico might encroach from the building line upon any of the streets or alleys of the City, and in terms repealed all "inconsistent ordinances." It was decided that the ordinance of 1874 did not repeal the one of 1854, the Court saying in that connection: "There is no specific reference to the ordinance allowing 'any portico, steps or any other ornamental structure whatever' to extend nine feet into Mount Vernon Place, in that clause of the ordinance of 1874 which repeals 'inconsistent ordinances,' and regarding the former as a special and the latter as a general ordinance they should be considered *in pari materia*. They are not inherently incompatible. The general rule in the construction of statutes, applicable alike to the Act of 1854 and the Ordinance of 1874—is that a later one of a general nature does not effect the repeal of a special one unless direct reference is made to the latter with that intent, or in terms they are so irreconcilable that a repeal by implication is manifest."

In view of the principles of construction of statutes thus announced by our predecessors and the applications made of them in the decided cases, and also in view of the fact that the Legislature refused to pass House Bill No. 273 of 1908, which by direct reference to the Baltimore and Curtis Bay Railway Company would have so amended its charter as to compel it to make the change of the location and character of its tracks, we think it should not be held to have intended, in the passage of chapter 654, known as House Bill No. 315, to do by implication or indirection what it had a short time before refused to do directly, and amend the charter of that company.

It is of course within the power of the Legislature to so amend the charter of that company, by the passage of an Act appropriate for the purpose, as to require it to remove or to

change the character and location of its tracks. In that event however the removal or change of the tracks could be enforced only upon fair principles of indemnity in respect to expenditures made by the company in good faith in constructing its tracks and overhead work along the margin of First street in conformity with and in reliance upon the terms of its charter, before the passage of the Act of 1908. As we held in effect in *Websler* v. *Cambridge Seminary, supra,* the Legislature could not under the guise of an amendment to the charter of the company divest without compensation its vested property right acquired in the legitimate exercise of the powers conferred by its charter while that instrument remained in force. See also to same effect *Lake Roland Ry. Co.* v. *Baltimore,* 77 Md. 381; *Wilderman* v. *Mayor,* 8 Md. 556; *Bramble* v. *Twilley,* 41 Md. 442; *Remington* v. *Metropolitan Bank,* 76 Md. 548; *Rock Hill College* v. *Jones,* 47 Md. 17-18; *Harris* v. *Whitely,* 98 Md. 442; *Jockey Club* v. *State,* 106 Md. 413.

Section 4 of the Shoemaker Road Law provides: "That the specifications shall require the construction and improvement, within a reasonable time, of a macadamized or of a telford or of other stone road, or of a road constructed of gravel, or of other good material, in such manner that the same will be with reasonable repairs thereto, at all seasons of the year, firm, smooth and convenient for travel."

The appellants contend that the Legislature did not intend by that section to restrict the roads, authorized to be made or improved, to the class known as Telford or Macadamized which are conceded to be similar in character, but intended by the use of those terms to fix a minimum and not a maximum standard of excellence and durability below which the Geological Survey should not descend in drawing specifications for the roads.

The counsel for the appellee, on the other hand, contends that the phrase "other good material" used in section 4 of the Law must be construed to mean material *ejusdem generis* with the material previously specified, as the law was obvi-

ously intended to provide for the construction of county roads
and not for the paving of streets in towns and cities, as the
expression paving nowhere occurs in the law.    He further
insists that if vitrified brick is to be regarded as "other good
material" within the meaning of the Act then the appellee as
a county taxpayer has the right to insist that the State must
pay one-half the cost of paving the streets with such brick in
the cases in which that material is selected by the Survey.

We concede soundness of the last proposition of the appel-
lee; but we do not think the language used in section 4 of the
Act, in describing the type of roads to be built and the char-
acter of material to be used in their construction, is sufficient-
ly exact or positive to exclude all other kinds of road than
Macadam or Telford.    The expressions used "of a macadam-
ized *or* of a telford, *or* of other stone road, *or* of a road con-
structed of gravel *or* of some other good material" are broad
and alternative in character and manifest an intention on the
part of the Legislature to confide to the technical skill and
practical judgment of the members of the Geological and
Economic Survey the selection of the designated types of
road construction or their equivalents.    The varieties of soil,
location and exposure to be dealt with in so broad a scheme
of road construction as that contemplated by the Shoemaker
Law, and the different degrees of frequency and severity of
use to which roads in the various portions of the State would
most likely be subjected, necessarily required the allowance
in the provisions of the Act of reasonable latitude in the
selection of the type of road to be built in any particular
locality and the material to be used in its construction.    From
such considerations, as well as from the general scheme and
the provisions of the Act itself, it is reasonable to conclude
that the Legislature in its passage did not intend to limit to
one or two similar types all of the roads to be constructed un-
der its authority.    It is more rational to interpret the use of
the expressions found in section 4 of the Act as manifesting an
intention on the part of the Legislature to indicate to the
members of the Survey, to which it confided the selection in

each instance of the appropriate character of both road and material to be adopted, that such permanent and durable styles of construction be adopted as would increase the comfort and safety of travel and also yield an adequate return for the expenditure of public funds which they involved.

For the reasons stated in this opinion the order appealed from must be affirmed.

*Order affirmed with costs.*