OWEN E. HITCHINS *v.* MAYOR AND CITY COUNCIL OF CUMBERLAND.

[No. 45, October Term, 1939.]

*Decided October 3rd, 1939.*

The cause was argued, as of the April Term, before BOND, C. J., OFFUTT, PARKE, MITCHELL, and DELAPLAINE, JJ.

*H. Warren Buckler, Jr.,* with whom were *Niles, Barton, Morrow & Yost* on the brief, for the appellant.

*Charles Z. Heskett, City Solicitor,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The single question presented upon this appeal is whether the title to chapter 23 of the Acts of 1939 meets the constitutional requirements of art. 3, sec. 29, of the Constitution, which, among other things, provides that: "Every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

The title to chapter 23 of the Acts of 1939 is as follows: "An Act to authorize the Mayor and City Council of Cumberland, Maryland, to borrow the sum of One

Hundred and Fifty Thousand ($150,000.00) Dollars and to issue Coupon Bonds for payment of the same to be known as 'Water Improvement Bonds of 1939,' and to sell the same and to use the proceeds thereof for the pur-pose of paying expenses incident to the construction of a 'Cross-Town Water Line,' and to provide for payment of said Bonds and the interest thereon and declaring this to be an emergency law."

Section 3 of the above Act in part provides: "And be it further enacted, That upon the sale of said bonds or any part thereof, the proceeds thereof shall be placed in a separate fund and used by the Mayor and City Council for the purpose of paying any expenses of any kind incurred by it in connection with the construction of a 'Cross-Town Water Line,' and other necessary purposes heretofore or hereafter affecting the water supply of the City of Cumberland, and for no other purpose or purposes."

As indicated by its title, the above Act authorizes the Mayor and City Council of Cumberland to borrow the sum of one hundred and fifty thousand ($150,000) dollars and to issue and sell coupon bonds in that amount for the purpose of making certain improvements to the existing water system of the city; and, in pursuance of the authority conferred by the Act, Ordinance No. 1689 was passed by the Mayor and City Council of Cumberland, providing for the issue and sale of the bonds. That ordinance, in substance, authorizes the issue of bonds to the extent of $150,000, the same to be known as "Water Improvement Bonds of 1939"; limits the interest rate to be paid on the indebtedness; fixes the denomination in which the bonds shall be issued; provides for the manner in which they shall be offered for sale, and the ways and means by which a sinking fund for their redemption will be established, and their ultimate payment effected.

Section 3 of the ordinance, among other things, provides: "That upon the sale of said bonds or any part thereof, the proceeds thereof shall be placed in a sepa-rate fund and used by the Mayor and City Council for

the purpose of paying any expenses of any kind incurred by it in connection with the construction of a 'Cross-Town Water Line,' and other necessary purposes heretofore or hereafter affecting the water supply of the City of Cumberland, and for no other purpose or purposes * * *."

In pursuance of the authority vested in it by the Act, and by the ordinance to which references have been made, on May 8th, 1939, at a regular meeting of the City Council of Cumberland, duly called and held, bids were received for one hundred and thirty thousand ($130,000) dollars, par value, of the bonds so authorized; the highest bid received and the one accepted being from George M. Farris & Company, Inc., of Washington, D. C.

According to the allegations of the bill of complaint, and as admitted by the answer filed in the case, the successful bid was submitted and the bonds purchased "upon condition that they be approved as to legality by counsel of its own choosing," and it is further alleged and admitted, "that said purchaser having purchased said bonds upon condition that they be approved as to legality by counsel of its own choosing, has declined to accept said bonds, according to its contract of purchase, for the reason that counsel for said purchaser have advised said purchaser that they have serious doubts whether said Act of Assembly is valid authority for the issuance of said bonds, since the title of said Act is inadequate in that it misrepresents the purposes set forth in the body of said Act, in violation of the provisions of Section 29 of Article 3 of the Constitution of the State of Maryland which requires that the subject of a statute shall be described in its title."

Specifically, it is averred that the title of said Act states that the proceeds of the sale of said bonds are to be used for the purpose of paying expenses incident to the construction of a Cross-Town Water Line, only; but that as will appear by reference to section 3 of the Act, the Mayor and City Council of Cumberland is authorized to use said proceeds for the purpose of paying any ex-

penses of any kind incurred by it in connection with the construction of a Cross-Town Water Line, and also for "other necessary purposes heretofore or hereafter affecting the water supply of the City of Cumberland."

And that, as set forth in the ordinance passed by it, it is the purpose of the Mayor and City Council to use the proceeds of the sale of the bonds, not only for the construction of the Cross-Town Water Line, but also for other necessary purposes affecting the entire water supply of the city, whether the necessity existed prior to the passage of the Act, or afterwards develops.

The question as to the validity of the Act is raised by a resident taxpayer and water consumer of the City of Cumberland, who filed the bill of complaint against the Mayor and City Council of Cumberland, a municipal corporation, and the Mayor of the city and certain other designated officials, praying an injunction to restrain the said officials from issuing said bonds and consummating the sale thereof.

The answer of the city admits all allegations of fact contained in the bill of complaint, but, nevertheless, denies all allegations found therein tending to challenge the constitutionality or validity of the Act.

The case was submitted below upon bill, answer, exhibits and an agreed statement of facts, and from a decree dismissing the bill of complaint this appeal was taken.

While, as observed by the learned chancellor at the hearing below: "No statement of facts can be received to contest the question of law involved in the construction of the Act, the statement as a whole can be received or accepted as supplemental to or amplifying the allegations of both bill and answer."

As thus amplified, the record shows that the Mayor and City Council of Cumberland, Maryland, owns and operates a municipal water system, through which it supplies water to the inhabitants of the city, its industries and places of business, and likewise supplies water in adjacent suburban communities. That the source of

the supply of water for the city's system is located in Evitt's Creek, Pennsylvania, where the city owns and operates, through the Evitt's Creek Water Company, two large impounding dams. That the water is piped through a large concrete conduit which connects the source of supply with a storage reservoir, known as Fort Hill Reservoir, located at Cumberland, and that from Fort Hill Reservoir lateral water lines extend in and across the city.

It is further shown that the reservoir was constructed in 1912, and is located at the extreme eastern edge of the city.

In 1920, the facilities and storage capacity of the Fort Hill Reservoir became overtaxed, and the water system of the city was augmented by the construction of an additional storage reservoir, known as the Ridgedale Reservoir, located on the extreme western edge of the city.

Since 1920, the latter reservoir has been stored with water which first passed through the Fort Hill Reservoir, and reached it through a lateral pipe line which lacked the capacity necessary for a balanced supply of water between the two sections of the city.

The purpose of the Act now under consideration, therefore, is to authorize the Mayor and City Council of the city to borrow sufficient money to enable it to correct the above situation, by constructing a twenty-four-inch water main across the city; the primary plan being to tap the large concrete conduit before it connects with Fort Hill Reservoir, and supply the Ridgedale Reservoir with a greater and more direct flow of water, through the instrumentality of an adequate main line. It is also the purpose of the city authorities to connect the Cross-Town Water Line with lateral lines now laid in the section of the city through which the proposed main line will pass; and in some cases, it is conceded that, in order to join these lateral lines with the proposed Cross-Town Line, it will be necessary to extend them at different points; the extensions varying in length from 200 to 800 feet, and it being intended that the cost of such exten-

sions be paid out of the proceeds of the proposed bond issue.

Counsel for the appellant, in their brief, conceded that both the title and the body of the Act deal with the same subject, but it is contended that the provisions of the Act grant a greater and broader authority than is indicated by the title, and that the latter is, therefore, misleading in that it purports to restrict the purposes of the statute to a narrower scope than that actually permitted by its provisions.

Stated differently, it is submitted that if the title had read "An Act to authorize the Mayor and Ciy Council of Cumberland, Maryland, to borrow the sum of One Hundred and Fifty Thousand ($150,000.00) Dollars, and to issue coupon bonds for payment of the same to be known as 'Water Improvement Bonds of 1939'," and had ended at that point; then the title would have been sufficiently descriptive of the power and authority conferred by the Act itself. But inasmuch as the title to the Act does not end as above indicated, and goes further and provides that the proceeds realized from the sale of the bonds shall be used "for the purpose of paying expenses incident to the construction of a 'Cross-Town Water Line' ", it is urged that the title is not in harmony with the provisions of section 3 of the Act, which, as has been noted, expressly provides that said proceeds, in addition to the use thereof in connection with the construction of a "Cross-Town Water Line," may be used "for other necessary purposes heretofore or hereafter affecting the water supply of the City of Cumberland."

As has been observed by our predecessors, section 29 of article 3 of the Constitution of this State has formed the basis for numerous attacks upon the validity of acts of the Legislature, and because of that fact, this court has been called upon to construe the section on many prior occasions. Some well defined rules of construction in connection with the section have therefore been established, and it will be helpful to refer to them for the purposes of the instant case.

Obviously, the objective of the quoted clause of the section is to require that the title to every bill introduced in either branch of the Legislature shall be so drafted as in concise and succinct terms to indicate at a glance the purpose for which legislation contemplated by the introduction of the bill is designed.

In *Davis v. State,* 7 Md. 151, 160, an almost identical clause of the Constitution of 1851, article 3, section 17, was involved, and it was then said: "A practice had crept into our system of legislation, of engrafting, upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such provisions, which if they were offered as independent subjects, would never have received their support. In this way the people of our State, have been frequently inflicted with evil and injurious legislation. Besides, foreign matter has often been stealthily incorporated into a law, during the haste and confusion always incident upon the close of the sessions of all legislative bodies, and it has not unfrequently happened, that in this way the statute books have shown the existence of enactments, that few of the members of the legislature knew anything of before. To remedy such and similar evils, was this provision inserted into the Constitution, and we think wisely inserted."

But while the wisdom of the constitutional provision now subject to our review is apparent, it is also equally apparent that, although courts have not hesitated to strike down acts which were clear infractions of its purpose and object, it has received a liberal construction by them, and they have, on the other hand, been reluctant in any case to give it an effect which would defeat the legislative will, unless the Act is in clear violation of some constitutional provision. *Kafka v. Wilkinson,* 99 Md. 238, 57 A. 617; *Baltimore City v. Flack,* 104 Md. 107, 64 A. 702; *Nutwell v. Anne Arundel County,*

110 Md. 667, 73 A. 710; *Painter v. Mattfeldt*, 119 Md. 466, 87 A. 413.

In *State v. Norris*, 70 Md. 91, 16 A. 445, 446, it is said: "Many acts are passed, and often of great importance, the titles of which are exceedingly deficient in definite and clear description of the subject-matter of the act. But this court has ever been reluctant to defeat the will of the legislature by declaring such legislation void, if by any construction it could possibly be maintained." And the same principle is stated in *Dorchester County v. Meekins*, 50 Md. 28, as follows: "In construing Acts of Assembly in the light of the Constitution, every reasonable intendment must be made to enable both to stand, and an Act will not be held to be unconstitutional, unless it is in such plain conflict with some provision of the Constitution as to leave no discretion to the Court in the premises."

In the case of *Mayor etc. of Baltimore v. Reitz*, 50 Md. 574, 579, it was said: "If several sections of the law refer to and are germane to the same subject-matter which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect. While the title must indicate the subject of the Act, it need not give an abstract of its contents, nor need it mention the means and method by which the general purpose is to be accomplished. If foreign and irrelevant, or discordant matter is introduced it will be rejected, if other sections of the law can stand without it. But if the Act is composed of a number of discordant and dissimilar subjects, so that no one could be clearly recognized as the controlling or principal one, the whole law would be void."

As guided by the cited cases, therefore, the question for our determination in the case before us is: Whether the title to the Act involved by its terms narrows the Act to the authorization of a bond issue, the proceeds of the sale of which said bonds can only be used for the purposes of the construction of a "Cross-Town Water Line." In other words: Whether the provision of section 3 of

the Act, which, after providing for the payment of any expense of any kind incurred by the Mayor and City Council in connection with the construction of a "Cross-Town Line," further authorizes expenditures from the proceeds of the sale of said bonds for other necessary purposes heretofore or hereafter affecting the water supply of the city, with the restriction that such proceeds shall not be expended for any other purpose or purposes, is in conflict with the title to the Act.

It is evident from the whole context of the Act, that the essential purpose of its enactment was to authorize a bond issue designed to improve the facilities and add to the efficiency of the water system of the City of Cumberland; and that the basic project to that end was the construction of a water main extending across the city, for the obvious purpose of balancing its water supply, as between its eastern and western sections. And while, as is apparent from the title to the Act, it directs that the proceeds from the sale of the bond issue which it authorizes shall be used for the "purpose of paying expenses incident to the construction of a 'Cross-Town Water Line'," we are not disposed to so construe the quoted language of the title as to limit any and all construction under its authority to the laying of a water main across the city, and preclude its being connected or tied in with lateral water lines along the route of its construction. Or that the language of section 3 of the Act is so discordant and unrelated to the intent and purpose of the title, as to render the whole act void. To the contrary, it is our opinion that section 3 of the Act authorizes the expenditure of such funds as may be necessary to construct a Cross-Town Water Line, and such other works, including lateral mains, as may be necessary to the efficient operation of said line. Any other construction would make the Act broader than the title, and in violation of the constitutional prohibition. As said in the *Reitz* case, *supra*: "While the title must indicate the subject of the Act, it need not give an abstract of its contents, nor need it mention the means and method by which the general purpose is to be accomplished."

Furthermore, the provisions of the Act are germane to the general subject to which the title refers. *State v. Loden,* 117 Md. 373, 83 A. 564; *Curtis v. Mactier,* 115 Md. 386, 80 A. 1066; *Worcester County v. School Commrs.,* 113 Md. 305, 309, 77 A. 605; *Kingan Packing Assn. v. Lloyd,* 110 Md. 619, 73 A. 887; *Anne Arundel County v. United Rwys. & Elec. Co.,* 109 Md. 377, 72 A. 542; *Baltimore v. Reitz, supra; Drennan v. Banks,* 80 Md. 310, 316, 30 A. 655; *Brevard v. Baughman,* 167 Md. 55, 173 A. 40.

For the reasons here stated the *per curiam* order was passed by this court on August 3rd, 1939.