## No. 17,345.

ARVEY CORPORATION *v*. FUGATE, DIRECTOR OF REVENUE.

(272 P. [2d] 652)

Decided July 6, 1954.  Rehearing denied July 26, 1954.

Mr. JOHN R. COEN, Mr. FLOYD E. THOMPSON, Messrs. JOHNSTON, THOMPSON, RAYMOND & MAYER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

A. WACHOB, Deputy, Mr. OMER GRIFFIN, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

ARVEY CORPORATION, plaintiff in error, is an Illinois corporation which has a division known as Velsicol Corporation in behalf of which it is here suing, as well as for itself, and due to all of the controlling circumstances in this case, and to avoid confusion, we refer to plaintiff in error as Velsicol.

Velsicol seeks a reversal of a judgment of the district court of the City and County of Denver against it in the sum of $30,001.64 with interest in the amount of $1,-350.07, or a total of $31,351.71 in favor of the Director of Revenue of the State of Colorado on the Director's determination that the amount of the judgment was due from Velsicol as income tax liability for income received from a source in Colorado. Velsicol, a manufacturer of insecticides, had manufacturing plants in Illinois and Tennessee and conducted no manufacturing operations in Colorado. Julius Hyman, who, it was claimed had contractual and fiduciary relationships with Velsicol, and who, by research and discovery, invented the insecticides, and through his contractual obligation was to assign to Velsicol any discovery or invention while so employed. Differences arose, which were not resolved, and Hyman, who was vice-president and director of the corporation, resigned. After some litigation, and at his solicitation, other individuals in the employ of the company left its employ and a new Delaware corporation was formed under the name of Julius Hyman and Company, with authority to do business in the State of Colorado, and began operations in the State of Colorado in the manu-

facture of insecticides, and more particularly, Chlordane, in February, 1947.

Velsicol filed an action in the district court of the City and County of Denver to obtain an injunction against Hyman and Company, and a number of individual defendants who had left Velsicol and joined the Hyman company, to enjoin and restrain them from manufacturing and selling certain insecticides; from disclosing to others the formulas, processes and products used in the manufacture thereof; and further requiring defendants to account to plaintiff for gains and profits resulting from the manufacture and sale of such insecticides, as well as for damages resulting from unfair competition and by wrongful use of Velsicol's trade secrets, trademarks and names. Upon trial, an injunction was issued by the trial court which determined that Velsicol was entitled to recover from Hyman and Company all of the gains and profits from the production and sale of Chlordane for the accounting period ending March 31, 1949. Hyman and Company sought a review of this judgment in our court and by our opinion in *Hyman & Co. v. Velsicol Corp.*, 123 Colo. 563, 233 P. (2d) 977, announced on May 28, 1951, the judgment of the trial court in the amount of $1,238,789.10 was affirmed, and in the opinion we repeatedly expressly stated that Velsicol was entitled to the profits realized by Hyman and Company during the accounting period.

Shortly after the announcement of the affirmance of the judgment by our court, the Director of Revenue of the State of Colorado made a determination of income tax liability against Velsicol on the theory that the proceeds of said judgment and interest thereon was taxable income under the laws of the State of Colorado, and made a jeopardy assessment, which, after conferences and discussions, resulted in a final determination by the Director of Revenue that the tax liability of Velsicol was in the amount of $30,001.64 with interest in the amount of $1,350.07, or a total of $31,351.71. Velsicol filed notice

of appeal and supplemental statements in connection therewith, together with protest of the deficiency assessment and a final determination was made and demand for payment thereof was issued; whereupon Velsicol filed its complaint against the Director of Revenue as an appeal from the final determination of the deficiency income tax assessment, and after answer was filed, trial was had to the court resulting in judgment in favor of the Director of Revenue and against Velsicol for the full amount of the assessment.

The assessment was made pursuant to section 2 (b) (1) chapter 196, page 453, S.L. 1951, which is as follows: "Upon corporations, except those corporations described in paragraph (e) of this section, there shall be levied and collected and paid for each taxable year, a tax at the rate provided in subsection (b) (2) of this section upon the net income of every corporation derived from sources within this state on or after the effective date of this Act. Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."

As to the matter of the amount of money involved and all the circumstances connected therewith as herein related, there are no disputed facts. The precise question presented is whether or not the monies received by Velsicol from the judgment, including the profit made by Hyman and Company, constitute "income derived from sources within this state" and as such is it subject to tax? Velsicol contends that since it never was domiciled in the State of Colorado, had no property located or having a situs in Colorado, having never engaged in business in Colorado, had no office in Colorado for the solicitation of business, and has never carried on commerce in this state, it therefore never derived any income from sources within the state, directly or indirectly, within the meaning of the Colorado Income Tax Act, supra, and

further, that the situs of its right being an intangible, was at the place of domicile of the owner.

■ ■ That the monies recovered and received from the judgment against Hyman and Company were income to Velsicol has been adjudicated by our Court. If, as is Velsicol's theory and contention, this was in the field of intangibles, then such is included as a taxable item if the source was within this state. The question of what is the source is not confined or limited to the requirements or the objects claimed by Velsicol, but rather includes "sources," which is without limitation, and is not confined to business activities carried on in this state. The expression in the statute, "income from sources within this State" is broad and all inclusive. In the matter of assessment as applied in income taxation, there appears to be a business situs of intangibles which may be separate and distinct from the domicile of the owner.

■ The entire origin of the monies involved, even to the source of the establishment of the Hyman and Company's business and its operation was in the State of Colorado and whatever profits were made or to be made from the operations of Hyman and Company in Colorado, were subject to such corporate income tax as might be found to be levied upon and due. There is not, and cannot be, any dispute as to this situation. This taxing process reaches all corporations and is not confined to foreign corporations; it levies a tax on income from all sources; and includes income from tangible or intangible property with a situs in this state. Income that may be received is not limited to the profits from commercial operations and therefore the case of *Cruse, Director of Revenue v. Stayput Clamp & Coupling Co.*, 113 Colo. 254, 156 P. (2d) 397, is not in point, wherein there was an interpretation of the phrase "business transacted within this state" and not "income from sources within this state." Of course, the source or origin of any income naturally has a situs, and the decisions, let alone com-

mon sense, tell us that the situs is the location of the business activities from which the income is derived.

■ ■ Velsicol's contention to the effect that the $1,238,787.10 received is not profit, but rather compensation for injuries suffered by the wrong and illegal acts of Hyman and Company, is not convincing. Whatever profits Hyman and Company were making on which it would have been compelled to pay a tax was lost to it by its wrongdoing and thereby brought about a complete and total transfer of such profits to Velsicol. If the judgment recovered by Velsicol is merely compensation or damages for injuries as Velsicol holds, then, of course, it could not be classified as income, but such is not the case, and Velsicol admits that the proceeds were "income" as classified under the Internal Revenue Code of the United States and "probably" constitute income under the Income Tax Act of Colorado to a resident of Colorado. This admission is made by way of insisting that the real question here involved is one of jurisdiction to tax. In the last analysis, the question seems rather simple, in that Velsicol is precluded by an adjudication that the monies it received was income; that such income constituted the profits from the operation of a Colorado corporation; and therefore the source of the income was confined strictly to Colorado. Had Velsicol been operating in Colorado to the same extent, and accumulated the same profits, it would have been subject to the tax, because it had received the income from such profits. By the same token, when it ultimately receives that profit, or takes it away from another corporation, it cannot say that the income was not derived from a source in Colorado, and because it was not doing business here and was domiciled in Illinois, it cannot escape Colorado's income-taxing arm by such claim. If its contention was here upheld and the procedure that it insists upon was followed and countenanced by our Court, the door would be open for designing individuals or corporations to arrange, by such method, for the escape from

legal and just taxation. All of the factual situations here involved give the State of Colorado jurisdiction to impose the tax, and in doing so does not violate the Fourteenth Amendment of the Constitution of the United States in any sense.

As a finality, Velsicol accepted the profits claimed due it knowing that the entire source thereof was within the State of Colorado and wrongfully and unjustly relies upon its status as a foreign corporation to evade the tax. When it accepted the profit of Hyman and Company's operations, for which Hyman and Company would have had to pay a like tax as is levied, then Velsicol stepped into the shoes of Hyman and Company and must walk in the path the law directed for that Company. The tax here imposed carries with it every element of due process. We might well have adopted the findings and conclusions of law of the trial court, which were carefully prepared, and logically concurred in its judgment. Believing that the judgment was right in every sense of the word and according to law, it is affirmed.