319 P.2d 195

JOHN HANCOCK MUTUAL LIFE INSUR-
ANCE COMPANY, a life insurance cor-
poration, Plaintiff-Respondent,

v.

P. G. NEILL, as Tax Collector of the State
of Idaho, Defendant-Appellant.

The UNION CENTRAL LIFE INSURANCE
COMPANY, a life insurance corpora-
tion, Plaintiff-Respondent,

v.

P. G. NEILL, as Tax Collector of the State
of Idaho, Defendant-Appellant.

Nos. 8399, 8423.

Supreme Court of Idaho.

Dec. 11, 1957.

Graydon W. Smith, Atty. Gen., Edward J. Aschenbrener and Elbert E. Gass, Asst. Attys. Gen., Boise, for appellant.

Ralph R. Breshears, Boise, for respondents.

Claude Marcus, Oscar W. Worthwine, Lloyd E. Haight and Carey H. Nixon, Boise, Alan G. Paine, Spokane, Wash., F. Gerald Irvine, Salt Lake City, Utah, A. L. Merrill, Pocatello, and Parry, Robertson & Daly, Twin Falls, and Franklin J. Allen, Salt Lake City, Utah, amici curiae.

TAYLOR, Justice.

Subsequent to the first opinion filed February 8, 1957, rehearing was had on November 4, 1957. The first opinion is withdrawn and the following substituted.

Plaintiffs (respondents), both life insurance companies (§ 63–3038, I.C.), brought separate actions against defendant (appellant) state tax collector, to recover taxes alleged to have been erroneously paid. The issues being the same in each, the cases were consolidated. The refunds sought are claimed to have arisen out of overpayment by plaintiffs of taxes levied and collected under the "Property Relief Act of 1931", Title 63, Chap. 30, I.C. The causes were submitted to the district court upon an agreed statement of facts, from which the following appears.

The John Hancock Mutual Life Insurance Company was, and is, a Massachusetts corporation with its principal place of business at Boston. It was authorized to engage, and was and is engaged, in the business of writing life, and health and accident insurance in this state. During the years involved it was the owner of bonds of the Idaho Power Company and the Boise Water Corporation. The bonds were purchased and held outside this state as an investment of its reserves and other funds. The principal and interest thereon were payable to the trustee in New York City, or, in the case of Boise Water Corporation, optionally, at Philadelphia. In making its returns to the state tax collector, required by Title 63, Chap. 30, I.C., for the years 1950, 1951 and 1952, plaintiff in its returns included interest received from the Idaho Power Company and the Boise Water Corporation upon the bonds of these corporations held by it, and paid the tax thereon required by that statute.

The facts in the case of The Union Central Life Insurance Company are the same, except that The Union Central was and is an Ohio corporation with its principal place of business in Cincinnati. It held bonds of the Idaho Power Company only, and is claiming refund of overpayment for four years—1950, 1951, 1952 and 1953.

The Idaho Power Company, during the years involved, was a corporation organized under the laws of Maine, with its principal office at Augusta, where its stockholders' meetings were held. It was authorized to, and did, do business in the state of Idaho as a public utility, with its principal office

in Boise. All of the electric power generated by it was generated within the state of Idaho. It did no business as a public utility in either of the states of Maine or New York. It derived all of its revenues from its business operations in the states of Idaho, Oregon and Nevada. All of its principal officers resided, and all of its directors' meetings were held, and all of its books of account and records were kept and maintained, and the general offices of its management were maintained, at Boise, Idaho. During the same period over 92% of its net operating revenue was derived from its business operations in Idaho, and more than 92% of the value of its total plant in service was located in Idaho.

The Boise Water Corporation during the period involved was a corporation organized under the laws of Idaho, with its principal place of business at Boise. It was doing business as a public utility and all of its operating property was located within, and all of its revenues were derived from its business operations in, the state of Idaho.

The bonds held by the plaintiffs were secured by trust indentures covering all of the properties of the respective issuing corporations, and were recorded in the counties of this state where such properties were located.

Pertinent provisions of Chap. 30, Title 63, I.C., affecting plaintiffs, are as follows: .

"Life insurance companies shall pay a tax for each taxable year according to and measured by their net income at the rate and on the basis specified in section 63–3028 of this chapter." § 63–3039, I.C.

"a. In the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends and rents arising within the state of Idaho." § 63–3040, I.C.

The pertinent portions of § 63–3028, I.C., providing the rate and basis of the tax, are:

"A tax shall be levied, assessed, collected, and paid for each taxable year upon:

"a. All corporations as defined in this chapter, except as herein otherwise expressly provided, for the privilege of carrying on and doing business within this state, in addition to license taxes levied under any law of this state and taxes levied upon the real and personal property of such corporations:

"b. * * *

"1. That the tax so imposed, levied and assesed [assessed] upon corporations and national banking associations shall be in addition to any license tax now or hereafter authorized by law, and taxes authorized upon the real or personal property of such corporations and national banking associations, but it shall be in lieu of any tax on the

shares of stock of such corporations and national banking associations.

"2. The amount of the tax levied under this section shall be according to and measured by the net income for each taxable year of such corporations and national banking associations from all sources, including the interest on bonds issued by or under authority of the federal government, and bonds issued by the state of Idaho or any of the municipal or other subdivisions thereof, and such tax shall be computed at the following rates, to-wit:" Then follows the rate of the tax graduated according to income.

Section 63–3041, I.C. defines net income as gross income less certain deductions therein enumerated. One of such deductions (subsection 5) allows a credit for investment expenses paid within the state of Idaho, and for an allocated portion of general expenses included in such investment expenses.

The John Hancock company claimed and was allowed deductions for investment expenses as follows: for 1950, $42,633.60; for 1951, $54,489.26; for 1952, $47,070.35. The Union Central claimed and was allowed deductions for investment expenses: for 1950, $6,489.02; for 1951, $4,674.22; for 1952, $4,814.40; for 1953, $4,413.96.

These companies are required by our law to invest, and keep invested, in approved securities, their minimum cash capital.

§§ 41–602 and 41–603, I.C. They are permitted by our law to invest any of their funds in approved securities of the quality approved for domestic insurers (§ 41–640, I.C.), including bonds of Idaho corporations. §§ 41–623 and 41–627, I.C. Thus they are both required and permitted to make investments under and by virtue of the franchise granted them by the state. And they are allowed to deduct from the measure of their tax the expenses incurred, including an allocated portion of their general investment expenses. It is apparent the legislature has recognized that investment of their funds is an essential part of the business of a life insurance company, and a part of the business authorized by the franchise for which the tax is exacted.

The agreed statement of facts contains the following:

"That neither the purchase nor the ownership of any of said bonds by the plaintiff nor the interest received therefrom by the plaintiff bears or has any relationship to the life insurance business done by the plaintiff in the State of Idaho or any property owned by the plaintiff in the State of Idaho."

If this stipulation is intended to mean that neither the bonds nor the interest thereon are employed by plaintiffs in their life insurance business in this state, the fact may be conceded for purposes of this decision. We understand it to be plaintiffs' position that the bonds and the interest

thereon, not being purchased or held in this state and not being in any way employed by them in, or in connection with, the insurance business carried on by them in this state, have not acquired a business or tax situs in this state. This proposition may also be conceded. The tax involved being a franchise tax and not a tax upon the interest, the tax situs of the interest is immaterial.

█ If the stipulation was intended to mean that the bonds and their interest have no relation to the business which plaintiffs are authorized by their franchises to carry on in this state, then it would be ineffective because, as so construed, it would be a conclusion of law contrary to the statutes above noted and not binding upon the court. Hart v. Turner, 39 Idaho 50, 226 P. 282; Hahn v. Nat. Casualty Co., 64 Idaho 684, 136 P.2d 739; Cox v. City of Pocatello, 77 Idaho 225, 291 P.2d 282; Valdez v. Taylor Auto. Co., 129 Cal.App.2d 810, 278 P.2d 91; North Platte Lodge v. Board of Equalization, 125 Neb. 841, 252 N.W. 313, 92 A.L.R. 658, and Annotation 663, II e. page 670; National Bank of Colchester v. Murphy, 384 Ill. 61, 50 N.E.2d 748; Hitchins v. Mayor, 177 Md. 72, 8 A.2d 626; Swift & Co. v. Hocking Valley R. Co., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722.

It is to be noted that § 63–3028, I.C., containing the tax schedule, provides that the tax be levied upon net income "from all sources". In the case of insurance companies, gross income, § 63–3040, is limited to interest, dividends and rents arising within the state, no doubt because insurance companies are subject to the premium tax provided by Chap. 8, Title 41, I.C. John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359.

Plaintiffs contend that the interest received upon the bonds of the Idaho Power Company and the Boise Water Corporation did not arise within the state of Idaho; that the bonds are intangibles having their situs at the domicile of the owner under the rule of mobilia sequuntur personam, and that the income therefrom likewise has its situs for tax purposes at the domicile of the owner. Two fundamental questions are posed. First, is the interest on these bonds interest "arising within the state of Idaho" within the meaning of § 63–3040, I.C.? Second, is the tax violative of federal or state constitutions?

█ The answer to the first question appears sufficiently clear from the language of § 63–3040, I.C. The interest is paid out of the earnings of the Idaho Power Company and the Boise Water Corporation. The earnings of these companies arise out of business carried on within the state. The interest, being a portion of such earnings, therefore arises within the state. The fact that the interest is sent by the obligors to the trustee in New York for payment of the bond obligation, does not require the conclusion that it arises in New York. The

meaning ascribed by the legislature to the words, "interest arising within the state", is evidenced by § 63–3019 of the same act. That section, defining net income as applied to others than insurance companies, provides:

"a. In the case of a nonresident individual to the extent that he has a business situs in the state of Idaho, or any corporation subject to tax under this chapter, the following items of gross income shall be treated as income from sources within the state of Idaho:

"1. Interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise; * *." § 63–3019, I.C.

■ Plaintiffs object to consideration or application of § 63–3019 because its provisions are not applicable to insurance companies and that the particular sections defining net income of life insurance companies, §§ 63–3040 and 63–3041, are controlling. We recognize the rule that a particular statute, in case of conflict or inconsistency, controls over a general statute. Here, however, there is no inconsistency or conflict between the two sections. The applicable rule is that the entire act and all of its provisions are to be construed as a whole in determining legislative intent. Oregon Short Line R. R. Co. v. Minidoka County School District, 28 Idaho 214, 153 P. 424; Lebrecht v. Union Indemnity Co., 53 Idaho 228, 22 P.2d 1066, 89 A.L.R. 640;

Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 P.2d 105; Keenan v. Price, 68 Idaho 423, 195 P.2d 662; Nampa Lodge No. 1389, etc. v. Smylie, 71 Idaho 212, 229 P.2d 991; Barraclough v. State Tax Commission, 75 Idaho 4, 266 P.2d 371; Atlantic Coast Line R. Co. v. Commonwealth, 302 Ky. 36, 193 S.W.2d 749; Bond v. Kennedy, 213 Ark. 758, 212 S.W.2d 336; Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 184 So. 428, certiorari denied 306 U.S. 656, 59 S.Ct. 774, 83 L.Ed. 1054. The act itself is replete with cross references from one section to another, evidencing the intent of the legislature that it should be construed as a whole. In fact, the legislature made the provisions of § 63–3019 applicable to life insurance companies by the use of the words "any corporation subject to tax under this chapter." "This chapter" includes sections 63–3040 and 63–3041, defining gross and net income of life insurance companies. Session Laws 1931 (E.S.) Chap. 2, §§ 37, 38, p. 40, and Session Laws 1933, Chap. 159, §§ 7, 15.

Subparagraph 7 of § 63–3013, I.C., exempts the income of resident persons and domestic corporations "when derived from sources outside of the state". As a reciprocal consideration this would indicate the intention of the legislature to include income of nonresidents and foreign corporations when derived from sources within this state. Indeed, such a construction is necessary to avoid placing a discriminatory

tax burden upon residents and domestic corporations. Assume the case of a domestic life insurance company doing business in the state in competition with plaintiffs. If such a company owned bonds of the Idaho Power Company or Boise Water Corporation, it must include the interest received upon those bonds in its return to the tax collector. Unjust discrimination would result if plaintiffs' interest were not included. Northwest Finance Co. v. Nord, 70 S.D. 549, 19 N.W.2d 578.

The following authorities are not necessarily in point to the extent they deal with "tax situs" of intangibles, and income or other taxes dependent upon such situs. They do, however, support our view that the interest concerned herein arose within this state, is a part of the "gross income" of plaintiffs as defined by § 63–3040, I.C., and that the franchise tax measured thereby is not unconstitutional. In State ex rel. Froedtert G. & M. Co. v. Tax Commission, 221 Wis. 225, 265 N.W. 672, 267 N.W. 52, 56, 104 A.L.R. 1478, the Wisconsin court held that a state tax upon the privilege of declaring and receiving dividends out of property located and business transacted in that state does not, as to nonresident stockholders, violate due process or tax property or persons beyond the jurisdiction of the state. "The fact that the dividends involved are derived from earnings within the state gives them a constructive situs within the state." In an earlier decision, State ex rel. Manitowoc Gas Co. v. Wiscon-

sin Tax Commission, 161 Wis. 111, 152 N. W. 848, relied upon by respondents, the Wisconsin court had held that interest paid by a domestic corporation to nonresident bondholders had its situs at the domicile of the bondholder and was not taxable in Wisconsin. In attempting to distinguish the Manitowoc case, the court, in the Froedtert case, said:

"Dividends derived from business transacted within the state constitute income derived as stated in that statute, and in the instant statute, in a sense that interest paid by a corporation does not. Interest paid may not have been earned at all. It may have been borrowed. And if earned it may not have been earned within the state, or not wholly earned therein. 'Income' as used in the statute is synonymous with 'earnings'. Interest paid is not." State ex rel. Froedtert G. & M. Co. v. Tax Commission, 221 Wis. 225, 265 N.W. 672, 676, 104 A.L.R. 1478, at page 1485.

The distinction appears to be lacking in substance. If the interest was borrowed, the new loan and its accompanying interest must eventually be paid out of earnings. Affirming a later Wisconsin decision, 243 Wis. 198, 10 N.W.2d 169, 243 Wis. 211, 10 N.W.2d 174, the Supreme Court of the United States said:

"Personal presence within the state of the stockholder-taxpayers is not es-

sential to the constitutional levy of a tax taken out of so much of the corporation's Wisconsin earnings as is distributed to them. A state may tax such part of the income of a non-resident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers. (Cases cited) And the privilege of receiving dividends derived from corporate activities within the state can have no greater immunity than the privilege of receiving any other income from sources located there.

"We think that Wisconsin may constitutionally tax the Wisconsin earnings distributed as dividends to the stockholders. It has afforded protection and benefits to appellant's corporate activities and transactions within the state. These activities have given rise to the dividend income of appellants' stockholders and this income fairly measures the benefits they have derived from these Wisconsin activities." International Harvester Co. v. Wisconsin Dept. of Tax., 322 U.S. 435, 64 S.Ct. 1060, 1064, 88 L.Ed. 1373, at pages 1379–1380.

In Union Electric Co.'s Petition, 349 Mo. 73, 161 S.W.2d 968, 970, 143 A.L.R. 141, the Missouri court held that dividends received by a domestic corporation upon stock owned by it in a foreign corporation, where the operations of the foreign corporation were entirely outside the state, were not income from sources within the state, and therefore not taxable. Referring to the rule of mobilia sequuntur personam, the court said:

"It is also true that for many purposes the situs of personal property is considered to be at the domicile of its owner. This latter proposition, however, is purely fictitious and is now limited in its application to a few cases, principally those regarding the devolution of estates of decedents and bankrupts. * * * In the field of income taxation in particular it is important to penetrate beyond legal fictions and academic jurisprudence to the economic realities of the cases. It is conceded that the actual expenditure of labor and the actual use of capital which gave rise to the income represented by these dividends took place outside the state of Missouri." Union Electric Co.'s Petition, 349 Mo. 73, 161 S.W.2d 968, 970, 143 A.L.R. 141, at page 144.

And as to the tax levied upon interest received by a Missouri taxpayer upon bonds of a foreign corporation held by it in Missouri, the court said:

"But an examination of the decisions previously cited shows that the actual

place where income payments are turned over to the taxpayer is not determinative of the source of the income. * * * These decisions and others like them make it plain that the mere point where payment reaches the hands of the taxpayer is not determinative of the source of the income. In the case of State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission, 161 Wis. 111, 152 N.W. 848, supra, the Supreme Court of Wisconsin held that income paid in the form of interest by a Wisconsin corporation to bondholders in other states was not taxable in Wisconsin. We are unable to agree with the reasoning of this case, however. We think that the source of the income is the person paying the interest and not the mere bond itself, which is only an evidence of the indebtedness. It therefore follows that the interest payments must be treated in the same manner as the dividend payments, and what we have said in regard to dividends will largely apply also to interest." Union Electric Co.'s Petition, 349 Mo. 73, 161 S.W.2d 968, 972, 143 A.L.R. 141, at page 146.

Declaring that the purpose of its income tax law was to tax income earned within the state by both foreign and domestic corporations, and to exempt income of both earned without the state, the Supreme Court of Mississippi held that interest paid by residents on loans made by a foreign corporation has its taxable source within the state. Mississippi Cottonseed Products Co. v. Stone, 184 Miss. 409, 184 So. 428, certiorari denied 306 U.S. 656, 59 S.Ct. 774, 83 L.Ed. 1054.

In Arvey Corp. v. Fugate, 129 Colo. 595, 272 P.2d 652, certiorari denied 348 U.S. 871, 75 S.Ct. 106, 99 L.Ed. 685, an Illinois corporation, which had no business domicile or situs in Colorado, was taxed by Colorado upon a judgment obtained by it in Colorado against a Colorado corporation for profits made by the Colorado corporation from business conducted in Colorado, in which trade formulas of the Illinois corporation were wrongfully employed. The court held that the judgment and interest thereon, representing profits from business conducted in Colorado, had its source and tax situs in that state:

"Of course, the source or origin of any income naturally has a situs, and the decisions, let alone common sense, tell us that the situs is the location of the business activities from which the income is derived." 272 P. 2d at page 655.

Plaintiffs also rely upon Miller v. McColgan, 17 Cal.2d 432, 110 P.2d 419, 134 A.L.R. 1424. There the California court held that a California resident was not entitled to credit against his California income tax for taxes paid to the Philippines on dividends on the stock of a Philippine corporation, although the certificates

were actually held in the Philippines by an agent of the California taxpayer. Speaking of this decision the Missouri court in Union Electric Co's Petition, supra, said:

"With all due deference to the learned brethren in our sister state we cannot agree with their conclusion." Union Electric Co.'s Petition, 349 Mo. 73, 161 S.W.2d 968, 971, 143 A.L.R. 141, at page 145.

In a more recent case the Second District Court of Appeal of California said:

"The respondent's brief, however, calls attention to the fact that the Miller v. McColgan case, 17 Cal.2d 432, 110 P.2d 419, [134 A.L.R. 1424] just cited, was based upon First Nat. Bank of Boston v. State of Maine, 1932, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, which latter case was specifically overruled in 1942 in State Tax Commissioner of Utah v. Aldrich, 316 U.S. 174, 180, 62 S.Ct. 1008, 86 L.Ed. 1358, for which reason 'Miller v. McColgan is not the law today'." Henley v. Franchise Tax Board, 122 Cal.App.2d 1, 264 P.2d 179, at page 181.

In the Henley case the court reached a conclusion directly opposite to that of the Miller case.

▆▆▆ It is generally held, as plaintiffs recognize, that intangibles may acquire a tax situs in a jurisdiction other than the domicile of the owner where such intangibles are employed by the owner in business carried on in the foreign jurisdiction. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143, was such a case. Chief Justice Hughes there said:

"To attribute to Delaware, merely as the chartering state, the credits arising in the course of the business established in another state, and to deny to the latter the power to tax such credits upon the ground that it violates due process to treat the credits as within its jurisdiction, is to make a legal fiction dominate realities in a fashion quite as extreme as that which would attribute to the chartering state all the tangible possessions of the corporation without regard to their actual location." 298 U.S. 193, 56 S.Ct. 777, 80 L.Ed. at page 1148.

In Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 906, 83 L.Ed. 1339, cited by plaintiffs, the court said:

" * * * there are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles. Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing state has created and controls; and income may be taxed both by the state where it is earned and by the state of the recipient's domicile. Pro-

tection, benefit, and power over the subject matter are not confined to either state. * * *

"The practical obstacles and unwarranted curtailments of state power which may be involved in attempting to prevent the taxation of diverse legal interests in intangibles in more than a single place, through first ascribing to them a fictitious situs and then invoking the prohibition of the Fourteenth Amendment against their taxation elsewhere, are exemplified by the circumstances of the present case." 307 U.S. 357, 59 S.Ct. at page 906, 83 L.Ed. at pages 1348, 1349.

Having particular reference to the constitutional issue urged by plaintiffs, we cite State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 250, 85 L.Ed. 267, 130 A.L.R. 1229. There the court said:

"* * * We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. 'Taxable event', 'jurisdiction to tax', 'business situs', 'extraterritoriality', are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without

due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has been given, clearly supports the tax." 311 U.S. 435, 61 S.Ct. at page 250, 85 L.Ed. at pages 270–271.

The same rule was again applied in Ott v. Mississippi Valley Barge Line Company, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585.

Upholding the right of the state to tax a note held by a non-resident and secured by a mortgage on realty in Florida, the supreme court of that state said:

"It is obvious that the recording of a mortgage, or other security, becomes the generating source of important and definite accessions to the obligation secured thereby. In fact, we think it may fairly be said that the transaction in the instant case would not have been entered into without the security afforded by the mortgage on Florida realty and the protection afforded by our recording statutes, and others, relating to the rights of a mortgagee. And the 'practical fact of our power' or sovereignty over such security is obvious. It is the fact of our sovereignty which gives life to such security —which transforms it from a worthless piece of paper into a valuable legal

'right." State ex rel. U. S. Sugar Corp. v. Gay, Fla., 46 So.2d 165, at page 168.

The federal act, after which ours was patterned, is construed in keeping with our conclusion. Mertens in his law of Federal Income Taxation, Vol. 8, §§ 45.27, 45.28 and 45.29, says:

"The Supreme Court has said that income may be derived from three possible sources only: (1) capital and/or (2) labor and/or (3) the sale of capital assets. While the definition seems no longer tied to these restrictive categories, they serve as useful guides in any inquiry into whether a particular item is from 'sources within the United States' and suggest an investigation into the nature and location of the activities or property which produce the income. If the income is from *labor* (services) the place where the labor is done should be decisive; if it is done in this country, the income should be from 'sources within the United States.' If the income is from *capital,* the place where the capital is employed should be decisive; if it is employed in this country, the income should be from 'sources within the United States.' If the income is from the sale of capital assets, the place where the sale is made should be likewise decisive. Much confusion will be avoided by regarding the term 'source' in this fundamental light. It is not a place; it is an activity or property. As such it has a situs or location; and if that situs or location is within the United States the resulting income is taxable to nonresident aliens and foreign corporations. The intention of Congress in the 1916 and subsequent statutes was to discard the 1909 and 1913 basis of taxing nonresident aliens and foreign corporations and to make the test of taxability the 'source' or situs of the activities or property which produce the income. * * * Thus, if an income be taxed, the recipient thereof must have a domicile within the jurisdiction, or the property or activities out of which the income issues or is derived must be situated within the jurisdiction so that the source of the income may be said to have a situs in this country. The basic rule is that the consideration for taxation is protection of life and property and that the income rightly to be levied upon to defray the burdens of the United States government is that income which is created by activities and property protected by this government. The result may be double taxation, but this is a matter within the jurisdiction of Congress, not the Board and courts." § 45.27, pp. 289–90.

"The residence of the obligor who pays the interest rather than the physical location of the securities or the place of payment, is the determinative factor of the source of such income." § 45.29, p. 295.

See also 167 A.L.R., Annotation, 943, at page 972; Metropolitan Life Ins. Co. v. City of New Orleans, 205 U.S. 395, 27 S.Ct. 499, 51 L.Ed. 853; Internal Revenue Act of 1928, Sec. 119(a) (1), 26 U.S.C.A. § 119(a) (1) I.R.C.1939; Annotation 76 A.L.R. 806, VII at page 816; Annotation 143 A.L.R. 361, VII at page 380.

Additional cases which we have considered and which support our conclusion that the tax does not violate the Fourteenth Amendment of the Federal constitution, nor the due process clause of our own constitution, are: Smallwood v. Jeter, 42 Idaho 169, 244 P. 149; Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A.L.R. 317; Scottish American Mtg. Co., Ltd., v. Minidoka County, 47 Idaho 33, 272 P. 498, 65 A.L.R. 663; Geo. B. Wallace, Inc., v. Pfost, 57 Idaho 279, 65 P.2d 725, 110 A.L.R. 613; John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359; State ex rel. Haworth v. Berntsen, 68 Idaho 539, 200 P.2d 1007; El Dorado Oil Works v. McColgan, 34 Cal.2d 731, 215 P.2d 4; Arvey Corp. v. Fugate, 129 Colo. 595, 272 P.2d 652, certiorari denied 348 U.S. 871, 75 S.Ct. 106, 99 L.Ed. 685; Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Newark Fire Ins. Co. v. State Bd. of Tax Appeals, 307 U.S. 313, 59 S.Ct. 918, 83 L. Ed. 1312.

Since our statute was patterned after the federal income tax act, plaintiffs urge that it should be construed in accord with decisions of the Supreme Court of the United States current at the time of its enactment in 1931. The Supreme Court of the United States has changed its position twice in regard to the present issue, as shown by Justice Douglas in State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358. The Supreme Court, as early as Tappan v. Merchant's National Bank, 19 Wall. 490, 22 L.Ed. 189, in 1874, if not as far back as the opinion by Chief Justice Marshall in M'Culloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579, had "rejected the notion that there were constitutional objections to double taxation of intangibles by states which had command over them or their owner". The rule was later departed from in cases cited by plaintiffs similar to First Nat. Bank of Boston v. Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401, holding under the rule of mobilia sequuntur personam that intangibles could not be taxed in more than one state. In the Tax Commission of Utah case, First Nat. Bank of Boston v. Maine was expressly overruled and the prior rule restored, to the effect that the taxation of intangibles in more than one state does not offend the constitution. Justice Douglas there said:

"* * * there is no constitutional rule of immunity from taxation of intangibles by more than one State. In case of shares of stock 'jurisdiction to tax' is not restricted to the domiciliary State. Another State which has

extended benefits or protection or which can demonstrate 'the practical fact of its power' or sovereignty as respects the shares (Blackstone v. Miller, 188 U.S. [189] at page 205, 23 S.Ct. [277], at page 278, 47 L.Ed. 439, [444] may likewise constitutionally make its exaction. In other words, we restore these intangibles to the constitutional status which they occupied up to a few years ago." State Tax Commission v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 1012, 86 L.Ed. 1358, at pages 1370–1371.

In concurring Justice Frankfurter said:

"The nullification of legislation on Constitutional grounds has been recognized from the beginning as a most 'delicate' function not to be indulged in by this Court simply because it has formal power to do so but only when compelling considerations leave no other choice." 316 U.S. 174, 62 S.Ct. at page 1013, 86 L.Ed. at page 1372.

Thus it appears that at the time our income tax law was enacted, the position of the Supreme Court of the United States was unsettled.

Moreover, in 1933 the legislature so amended our statute and changed the character of the tax, as to render the rule of mobilia sequuntur personam no longer applicable to corporate franchise taxes. The 1931 act levied an excise tax upon the income of corporations. Session Laws 1931, (E.S) Chap. 2, pp. 32 and 33. Diefen-dorf v. Gallet, 51 Idaho 619, 10 P.2d 307. The 1933 amendment made it a franchise tax upon "the privilege of carrying on and doing business within this state". Session Laws 1933, Chap. 159, p. 255 (§§ 63–3028, 63–3029, I.C.); Grange Mutual Life Co. v. State Tax Comm., 76 Idaho 303, 283 P.2d 187.

Under the 1931 act, the tax being an excise upon income, it could be urged that since the bonds were held outside the state, the income from them was not subject to the taxing power of the state, under the mobilia rule. The 1933 amendment transferred the incidence of the tax from income to the privilege of doing business in the state in the corporate form. The income or interest was no longer the subject of the tax. It became merely a standard or measure by which the tax on the privilege of doing business was determined. So it became relatively unimportant where the bonds were held, or where the interest thereon as such had its tax situs. The doctrine of mobilia sequuntur personam is not applicable in corporation franchise cases. Arkansas Fuel Oil Corp. v. Fontenot, 225 La. 166, 72 So.2d 465, 469 (appeal dismissed, 348 U.S. 804, 75 S.Ct. 46, 99 L.Ed. 635).

Kopp v. Baird, 79 Idaho 152, 313 P.2d 319, upon which plaintiffs rely, involved an excise tax levied upon income of an individual, not a corporate franchise tax. For that reason we held the doctrine applicable in the Kopp case.

In the Grange Mutual case, supra, we held that interest arising from tax exempt federal bonds could be included in the measure of the franchise tax because it was not a tax upon the exempt bonds or interest. The decision was based upon opinions of the Supreme Court of the United States, which that court has since reaffirmed. Werner Machine Co. v. Director of Div. of Tax., 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634.

■ Obviously the imposition of a franchise tax upon plaintiffs, measured by the number of their policyholders within the state would not be a tax upon the policyholders. Likewise the tax in question, measured by the amount of interest arising in the state, is not a tax upon the interest. So assuming the bonds and interest have their tax situs at the domicil of the owner, that fact does not affect the validity of the tax on the privilege of doing business in the state, merely because the interest is a part of the measure of the tax. We expressly do not decide whether the interest has a tax situs in this state, because that question is not in issue. The statute requires only that the interest arise within the state. This requirement reasonably relates the tax to benefits conferred by the state, as appears from the agreed facts in this case. For this the state may ask a return. State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229; Ott v. Miss. Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585; 84 C.J.S. Taxation § 134 e., pp. 270–271; Kennecott Copper Corp. v. State Tax Commission, 5 Utah 2d 306, 301 P.2d 562; Commonwealth v. Columbia Gas & Elec. Corp., 336 Pa. 209, 8 A.2d 404, 131 A.L.R. 927; Matson Navigation Company v. State Board of Equalization (Cal.) 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791; International Harvester Co. v. Wisconsin Dept. of Tax., 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373.

■ One of the amici curiae urges that ambiguous language of the statute should be so construed as to avoid socially undesirable or oppressive results, and that the construction contended for by the appellant would retard the economic development of the state. It may be agreed, where legislative language is ambiguous, and other rules of statutory construction do not control, the court should consider social and economic results. But we do not find the statutes involved to be ambiguous. In such case our duty is clear. We must follow the law as written. If it is socially or economically unsound, the power to correct it is legislative, not judicial. International Harvester Co. v. Wisconsin Dept. of Tax., supra; Lyons v. Bottolfsen, 61 Idaho 281, 101 P.2d 1; Wanke v. Ziebarth Const. Co., 69 Idaho 64, 202 P.2d 384; State v. Village of Garden City, 74 Idaho 513, 265 P.2d 328.

The fact that a small portion of Idaho Power Company's revenue is derived

406

from business and properties outside the state, is not made a point for decision. The act contemplates an apportionment and deduction of income and expenses from outside the state. §§ 63–3013(b) par. 7, 63–3002, subd. 1, 63–3019, subd. c, 63–3040, subd. a, I.C.

The judgments appealed from are reversed and the causes are remanded to the district court with directions to dismiss the actions.

Costs to appellant.

PORTER, SMITH and McQUADE, JJ., and NORRIS, D. J., concur.

KEETON, C. J., not participating.